Patrick J. BILYK, Plaintiff-Appellant,

v.

The VESSEL NAIR, et al., Defendants-Appellees.

No. 84–5515.

United States Court of Appeals, Ninth Circuit.

Submitted Dec. 5, 1984.*

Decided March 8, 1985.

---

* The panel unanimously finds this case suitable for decision without argument, pursuant to 28

U.S.C.A. 9th Cir.R. 3(f) and Fed.R.App.P. 34(a).

**1542**

Marshall L. Foreman, Donald L. Salem, Luce, Forward, Hamilton & Scripps, San Diego, Cal., for plaintiff-appellant.

Robert G. Dyer, Dyer, Brewer & Walton, San Diego, Cal., for defendants-appellees.

Before WALLACE, BOOCHEVER, and HALL, Circuit Judges.

BOOCHEVER, Circuit Judge:

At issue is whether United States law should be applied to an alleged accident which occurred on the high seas. The district court held that it should not and dismissed the complaint for failure to state a cause of action. We affirm.

## BACKGROUND

Bilyk, a United States citizen, was seeking work in El Cajon, California and learned that the owners of the fishing vessel Nair needed a helicopter pilot. The helicopter is used to scout for fish.

Bilyk boarded the vessel in Mexico, where he began work. The Nair flies the Mexican flag and is owned by a corporation organized under the laws of Mexico. The corporation has five shareholders. All are Mexican citizens; all are legal residents of Mexico, although the majority shareholder and his wife, who is also a shareholder, temporarily reside in California. The Nair fishes out of Ensenada, Mexico, where the corporation's only office is located. The vessel is licensed to fish only in Mexican and international waters and the corporation has never sold its fish to entities in the United States. The vessel occasionally calls in San Diego for repairs, and the corporation maintains a bank account there in order to pay for them.

Bilyk worked for a period of several months before signing the first of a series of written contracts in January 1982. Each contract governed one fishing trip; each was signed in Mexico (and was written in Spanish).

The alleged accident occurred in mid-December 1982 when Bilyk landed the ship's helicopter on the high seas and it subsequently sank. Bilyk sued in district court under the Jones Act, 46 U.S.C. § 688 (1982), and general maritime law. The court dismissed for failure to state a claim upon which relief could be granted, and for inconvenient forum. On appeal, plaintiff-appellant argues only that he did state a cause of action.

## STANDARD OF REVIEW

Whether United States or Mexican law applies to this case, i.e., whether a cause of action was stated under the Jones Act, is a question of law subject to de novo review. *Phillips v. Amoco Trinidad Oil Co.*, 632 F.2d 82, 84 (9th Cir.1980), *cert. denied*, 451 U.S. 920, 101 S.Ct. 1999, 68 L.Ed.2d 312 (1981).

## DISCUSSION

In *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), the Su-

preme Court discussed the factors to be considered by a court choosing between American and foreign maritime law. The purpose of the analysis is to balance the interests of the nations whose law might apply. *See* 345 U.S. at 582, 73 S.Ct. at 928 ("to avoid or resolve conflicts between competing laws by ascertaining and valuing points of contact between the transaction and the states or governments whose competing laws are involved"); *see also Phillips*, 632 F.2d at 86 ("*Lauritzen* requires that we compare the substantiality of our interest in a given transaction with that of other nations."). The analysis is the same for determining the applicability of the Jones Act and of general United States maritime law. *See Romero v. International Terminal Operating Co.*, 358 U.S. 354, 382 & n. 53, 79 S.Ct. 468, 485 & n. 53, 3 L.Ed.2d 368 (1959).

*Lauritzen* enumerated the seven factors "generally conceded to influence choice of law to govern a tort claim, particularly a maritime tort claim." 345 U.S. at 583, 73 S.Ct. at 928. The Court subsequently noted an eighth factor to be considered in certain cases. *Hellenic Lines v. Rhoditis*, 398 U.S. 306, 309, 90 S.Ct. 1731, 1734, 26 L.Ed.2d 252 (1970). The *Rhoditis* Court also observed that this list is not "exhaustive." *Id.*

### 1. *Law of the Flag*

"Perhaps the most venerable and universal rule of maritime law relevant to our problem is that which gives cardinal importance to the law of the flag." *Lauritzen*, 345 U.S. at 584, 73 S.Ct. at 929; *see also Phillips*, 632 F.2d at 86 n. 4; G. Gilmore & C. Black, *The Law of Admiralty* 477 (2d ed. 1975). There is no reason to belabor that the Nair is a Mexican vessel in form and in substance.

### 2. *Base of Operations*

To *Lauritzen's* list of seven factors, the *Rhoditis* Court added the base of the ship's operations. 398 U.S. at 309–10, 90 S.Ct. at 1734. On the strength of little more than this factor, which seems just to second-guess the flag formally flown, the Court applied the law of the base. *Id.* at 310, 90 S.Ct. at 1734 (Greek ship based in New York). Again, there is no question that the Nair is based in Ensenada, Mexico.

### 3. *Allegiance of Defendant Shipowner*

The *Lauritzen* Court observed that if an American national had registered his ship in a foreign nation to avoid this country's more stringent shipping regulations, the United States might enforce its laws against him provided that so doing would not infringe the rights of other nations or their citizens. 345 U.S. at 587, 73 S.Ct. at 930. In this case, even the first precondition is not met—the owner of the Nair and its shareholders are Mexican citizens and residents. This factor also argues for applying Mexican law.

### 4. *Inaccessibility of Foreign Forum*

The argument rebutted in *Lauritzen* was that it would be unduly expensive for plaintiff to travel to Denmark for compensation. Mexico, like Denmark, has a workmen's compensation-type scheme of which plaintiff might be able to avail himself at the Mexican consulate. But even if he cannot, this factor too must suggest Mexican law applies. Plaintiff joined the Nair in Salina Cruz, Mexico and was put ashore there after the incident involved here. From Salina Cruz, he travelled to San Diego of his own accord. It would be perverse to allow him to choose his forum by holding that a return trip to Mexico is unduly onerous.

### 5. *Place of the Wrongful Act*

All are agreed that the incident here took place on the high seas, which the *Lauritzen* Court reiterated "cannot be anyone's property." 345 U.S. at 583, 73 S.Ct. at 929. Like the next factor, this one is of little help in deciding the question.

### 6. *Place of Contract*

The written contract governing this trip was made in Mexico, although plaintiff could argue reasonably that he would not have gone there without having received verbal assurances in El Cajon, California. A factual battle over the actual location would be pointless. For claims not on the contract, the *Lauritzen* Court found this factor useful only insofar as the contract stipulated whose law would apply. 345 U.S. at 588–89, 73 S.Ct. at 931. No such clause is asserted in this case; it is improbable an oral agreement would contemplate it. The Court's purpose in discussing this factor seems to have been to demean its usefulness. "The place of contracting in this instance, as is usual to such contracts, was fortuitous. A seaman takes his employment, like his fun, where he finds it; a ship takes on crew in any port where it needs them." 345 U.S. at 588, 73 S.Ct. at 931.

### 7. *Law of the Forum*

So, too, the *Lauritzen* Court dispelled plaintiff's argument that New York law should apply because defendant had been served in New York.

The purpose of a conflict-of-laws doctrine is to assure that a case will be treated in the same way under the appropriate law regardless of the fortuitous circumstances which often determine the forum. Jurisdiction of maritime cases in all countries is so wide and the nature of its subject matter so far-flung that there would be no justification for altering the law of a controversy just because local jurisdiction of the parties is obtainable.

345 U.S. at 591, 73 S.Ct. at 932.

### 8. *Other Factors*

As noted, the factors discussed in *Lauritzen* and *Rhoditis* are not the only ones to be considered and in this vein, plaintiff points to the Nair's occasional stops in the United States for repairs, including repairs to the helicopter which was lost. First, this court has held the test here to be a weighing of national interests rather than a search for the minimum contacts that would suffice for jurisdictional purposes. *Phillips,* 632 F.2d at 86. Second, *Lauritzen* is again the voice of reason:

Respondent places great stress upon the assertion that petitioner's commerce and contacts with the ports of the United States are frequent and regular.... But the virtue and utility of sea-borne commerce lies in its frequent and important contacts with more than one country. If ... the courts of each were to exploit every such contact ... a multiplicity of conflicting and overlapping burdens would blight international carriage by sea.

345 U.S. at 581, 73 S.Ct. at 928.

Plaintiff also points to defendant's institution of a lawsuit in this country which claims that he (plaintiff) deliberately and maliciously sank the helicopter involved here. No case is cited which has considered a concurrent lawsuit a reason to invoke United States law, and for good reason. Defendants are most likely suing in California state court because they cannot obtain personal jurisdiction over plaintiff in Mexico. It would be illogical to let his uncooperativeness aid his case here if other factors suggest Mexican law is appropriate.

### 9. *Allegiance or Domicile of the Injured*

Plaintiff's argument, then, is reduced to this: he is an American citizen and should be entitled to sue foreigners in an American court. Apparently no case has arisen in which an American citizen seaman has sought to invoke United States maritime law on this basis alone. In only a few cases has it been argued that foreign law should apply to such a seaman. In those cases United States law was applied, but other circumstances were present. *See Uravic v. F. Jarka Co.,* 282 U.S. 234, 237–

38, 51 S.Ct. 111, 75 L.Ed. 312 (1931) (defendant stevedoring company American, plaintiff's decedent a longshoreman who worked in U.S. where accident occurred) (Holmes, J.); *Symonette Shipyards v. Clark,* 365 F.2d 464, 467 (5th Cir.1966) (contract and ship's articles signed in U.S., plaintiffs employed by an American), *cert. denied,* 387 U.S. 908, 87 S.Ct. 1690, 18 L.Ed.2d 625 (1967); *Nye v. A/S D/S Svendborg,* 358 F.Supp. 145, 147 (S.D.N.Y. 1973) (decedent employed by U.S. Company and flown directly to Spanish waters from U.S. to effect specific repairs to foreign ship), *aff'd in part, rev'd in part on other grounds,* 501 F.2d 376 (2d Cir.1974), *cert. denied,* 420 U.S. 964, 95 S.Ct. 1356, 43 L.Ed.2d 442 (1975); *Shorter v. Bermuda & West Indies S.S. Co.,* 57 F.2d 313 (S.D.N.Y. 1932) (ship tied at New York pier at time of accident).

Conversely, in *Tjonaman v. A/S Glittre,* 340 F.2d 290, 291–92 (2d Cir.), *cert. denied,* 381 U.S. 925, 85 S.Ct. 1561, 14 L.Ed.2d 684 (1965), the Second Circuit refused to invoke United States law for a United States permanent resident alien because he had "failed to show sufficient factors to justify the application of American law instead of the law of the flag." *Id.* at 292.

### CONCLUSION

Although some opinions in the lower courts have found plaintiff's citizenship the most weighty *Lauritzen* factor on their specific facts, *see Symonette,* 365 F.2d at 467; *Nye,* 358 F.Supp. at 151,[1] *Lauritzen* itself firmly mandates that the law of the flag controls, unless other factors point decidedly in a different direction, *see* 345 U.S. at 586, 73 S.Ct. at 930. Where, as here, all other factors point to Mexico, we will not extend the reach of American law into the

province of another sovereign. Accordingly, the dismissal is

AFFIRMED.

plaintiffs were injured on a stationary drilling rig, we put greater weight on the place of the accident than on the flag flown by the rig and greater weight on the allegiance of the plaintiffs than on that of the defendant shipowner. *Id.* at 87.

---

**1.** Similarly, in *Phillips,* this court stated that "[i]f this were a typical maritime case ... it would appear that American law would apply. We have determined, however, that the law of the flag should not be accorded controlling weight because of the facts of this case." 632 F.2d at 86–87 (footnote omitted). Because