## NORTHWESTERN NATIONAL INSURANCE COMPANY, Plaintiff–Appellant,

v.

## William F. DONOVAN, et al., Defendants–Appellees.

### Nos. 90–1366 to 90–1369, 90–1377.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 7, 1990.

Decided Oct. 17, 1990.

---

John A. Rothstein, Richard C. Ninneman, Quarles & Brady, Milwaukee, Wis., for plaintiff-appellant.

Stephen E. Kravit, K. Scott Wagner, Kravit, Waisbren & Debruin, Milwaukee, Wis., Martha B. Lawley, Glenda Kirsch, Ryan, Shoss, Sudan, & Lawley, Houston, Tex., for defendants-appellees.

Before POSNER, MANION, and KANNE, Circuit Judges.

POSNER, Circuit Judge.

An insurance company appeals from the dismissal, for want of personal jurisdiction, of five diversity breach of contract suits that it brought in a federal district court in Wisconsin. The principal ground of appeal and the only one we need discuss is that the defendants consented, in a valid forum-selection clause contained in the contract

on which the suits are based, to defend the suits in Wisconsin.

The parties agree that the validity of the clause is a matter of federal common law even though state law controls the substantive issues in the suits. There is a division between the circuits on the question, with the Ninth and Eleventh agreeing with the parties to this case that federal common law does indeed govern the question, *Manetti–Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 512 (9th Cir.1988); *Stewart Organization, Inc. v. Ricoh Corp.*, 810 F.2d 1066, 1068 (11th Cir.1987) (per curiam), aff'd on other grounds, 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988), while the Third believes that the validity of a forum selection clause is a matter of state law. *General Engineering Corp. v. Martin Marietta Alumina, Inc.*, 783 F.2d 352, 356–57 (3d Cir.1986). The former position is supported by *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988), and perhaps the circuit split will not survive it. The specific question in *Stewart* was whether, if a party moves for a change of venue under 28 U.S.C. § 1404(a) to the forum designated in the parties' forum selection clause, the court in considering the motion should treat the issue of the clause's validity as one of federal law; the Court said "yes," over a strong dissent by Justice Scalia which argued on grounds independent of the existence of section 1404(a)— particularly the spur to forum shopping that is created when the choice of a federal court over a state court determines the validity of a forum selection clause and hence the venue of the suit—that state law should apply. Probably, therefore, the parties before us are correct to concede that the issue of validity is one of federal law, though we need not decide this, since litigants are, within limits not exceeded here, permitted to designate what law shall control their case. *Casio, Inc. v. S.M. & R. Co.*, 755 F.2d 528, 531 (7th Cir.1985); Restatement (Second) of Conflict of Laws § 187 (1971).

Validity and interpretation are separate issues, and it can be argued that as the rest of the contract in which a forum selection clause is found will be interpreted under the principles of interpretation followed by the state whose law governs the contract, so should that clause be. But this is another issue we need not decide; neither side invokes any interpretive principles founded on a particular state's law.

The defendants are well-to-do individuals (millionaires, in fact, though millionairehood is not what it used to be), Texans for the most part, who early in the last decade bought limited partnerships in one of two closely related tax-shelter enterprises that for simplicity we shall treat as one. In 1984 the enterprise decided it needed more money. The lender to whom it turned required it to secure its promissory notes by a financial obligation bond, issued by Northwestern National Insurance Company, the plaintiff in these cases. Northwestern in turn required the limited partners to agree to indemnify it should it be forced to make good on its bond to the lender. Each of the partners in the cases before us executed the indemnification agreement that Northwestern furnished it, and this is the agreement that contains the forum selection clause. The enterprise later defaulted and Northwestern had to pay off the notes, after which it sued the limited partners to enforce their agreement to indemnify it.

The agreement is a two-page printed form. The first page is dominated by a blank table that the indemnitor is to fill in with his financial statement. The second page, which is on the back of the first, consists of six paragraphs in a small but fully legible typeface. The first and longest paragraph sets forth the indemnitor's obligation to indemnify the insurance company upon the occurrence of stated conditions. The second paragraph, much shorter, sets forth several reservations of no relevance here designed to protect the company. The third and shortest paragraph is the one in issue. It states: "Venue, at the Company's option for litigation and/or arbitration, shall be in the County designated on the front page under the description of the Company's address." That county, we see if we turn back to the first page, is Milwaukee County. The fourth through

sixth paragraphs are also short: they are a severability clause, a clause binding heirs and other successors, and a clause fixing the date on which the indemnity is to become effective. At the bottom is a space for signatures by the indemnitor and by a notary.

The district judge refused to enforce the forum selection clause and went on to hold that there was no other basis for obtaining jurisdiction over these out-of-state defendants. "In this case the forum selection clause is not compelling ... The clause was not freely negotiated. It is buried in the fine print. It does not clearly state where the case should be litigated. It compels an individual with no contacts with Wisconsin to travel to Wisconsin to defend a case brought by a Wisconsin insurance company. I cannot find that it would be reasonable or just, on the basis of this forum selection clause, to say that [the defendants] waived [their] rights to object to the court's personal jurisdiction over [them]. Because no other basis for personal jurisdiction exists, this action is DISMISSED."

In holding that a forum selection clause should be enforced only if reasonable and just, the district court relied on the *Stewart* case. The question in *Stewart*, however, was not the validity of the forum selection clause, but the criteria for granting a motion for a change of venue under 28 U.S.C. § 1404(a). The question here is not the most convenient place for trying these suits; it is whether the defendants consented to being sued in Wisconsin and by doing so waived their right to object to the jurisdiction of the courts (including federal courts) in Wisconsin over them. This case is governed by *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), and *Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286 (7th Cir.1989), decisions in which the enforceability of a forum selection clause was the issue. Those decisions bury the outmoded judicial hostility to forum selection clauses. They make clear that since a defendant is deemed to waive (that is, he forfeits) objections to personal jurisdiction or venue simply by not making them in timely fashion, a potential defendant can waive such objections in advance of suit by signing a forum selection clause. Their approach is to treat a forum selection clause basically like any other contractual provision and hence to enforce it unless it is subject to any of the sorts of infirmity, such as fraud and mistake, that justify a court's refusing to enforce a contract, or unless it does not mean what it seems to mean—unless, in other words, properly interpreted it is not a forum selection clause at all.

The attentive reader will have noticed a hedge word in the previous paragraph— "basically." Neither *Bremen* nor *Heller* says outright that a forum selection clause is just like any other contract. *Bremen* for example, using the terminology echoed in Judge Evans' opinion in this case, says that the clause will be enforced unless it is "unreasonable and unjust," which may or may not coincide, at least as a matter of semantics, with "subject to a contractual infirmity," another formulation found in the opinion. 407 U.S. at 12–13, 92 S.Ct. at 1914–15. Why might a court be more suspicious of a forum selection clause contained in a contract than of the contract itself? There are two reasons, one bad, one good. The bad reason is that courts used to look askance at agreements to "oust" their jurisdiction. The best-known example is arbitration. Agreements to arbitrate were not enforceable, because they deprived the objecting party of his right to litigate the parties' dispute in court. No reason why that right should not be waivable was ever given, and the rule that it could not be went down the tubes long ago. *Kulukundis Shipping Co. v. Amtorg Trading Corp.*, 126 F.2d 978 (2d Cir.1942); *International Ass'n of Machinists v. General Elec. Co.*, 865 F.2d 902, 903 (7th Cir. 1989). Likewise in the bad old days, invoking a forum selection clause as a ground for dismissal of a suit brought in violation of the clause was considered an improper effort to "oust" the court's jurisdiction. *M/S Bremen v. Zapata Off-Shore Co.*, *supra*, 407 U.S. at 9–12, 92 S.Ct. at 1912– 14. Although the use of such a clause not

to defeat but, as in this case, to defend a court's assumption of jurisdiction resulted in taking away another court's jurisdiction over the case, so formalistic was the concept of "ouster" that courts treated the use of such clauses to retain rather than to defeat jurisdiction far more leniently. Annot., 69 A.L.R.2d 1324 (1959). The analogy was to waiving objections to venue and personal jurisdiction, yet it could also have been used in the cases in which a forum selection clause was used to argue for dismissing a suit in a court barred by the clause, for in effect the party opposing dismissal was reneging on his agreement to waive objections to venue and personal jurisdiction in the court designated by the clause. All this nonsense was swept away by *Bremen.*

Yet there really is something special about forum selection clauses after all. They could interfere with the orderly allocation of judicial business and injure other third-party interests (that is, interests of persons other than the parties to the contract containing the clause) as well. Suppose, to take an extreme but illustrative example, that the state and federal courts in Alaska became immensely popular forums for litigating contract disputes and as a result thousands of contracts were signed designating Alaska as the forum in the event of suit. Not only would these clauses impose great burdens on the courts in Alaska; they would impose great burdens on witnesses who were not employees of the parties (the inconvenience to employees would have been taken into account when the clause was drafted). The burdens on the Alaska courts would include not only the obvious ones but also the difficulty of having always to be applying other states' laws, one of the considerations that has been thought to justify limiting parties' power to specify by contract the law to be applied to their dispute if one arises. Restatement (Second) of Conflict of Laws, *supra,* § 187(2)(a).

■ We are persuaded that the only good reason for treating a forum selection clause differently from any other contract (specifically, from the contract in which the clause appears) is the possibility of adverse effects on third parties. Where that possibility is slight, the clause should be treated like any other contract. What is more, if any inconvenience to third parties can be cured by a change of venue under section 1404(a), that is the route to follow, rather than striking down the clause. This approach enables a clean separation between issues of general contract validity and the third-party consequences which alone justify treating the validity of a forum selection clause differently from that of the contract that contains it.

We acknowledge a tension between our approach and that of the Ninth Circuit in *Shute v. Carnival Cruise Lines,* 897 F.2d 377, 388–89 (9th Cir.1990), cert. granted, —— U.S. ——, 111 S.Ct. 39, 112 L.Ed.2d 16 (1990), which refused to enforce a forum selection clause contained in a form contract that had not been negotiated. The opinion bristles with hostility to non-negotiated form contracts, but the facts were special. A passenger was injured on a cruise ship and brought suit. The cruise line sought to dismiss the suit on the basis of a forum selection clause printed on the passenger's ticket. The ticket had not even been mailed to the passenger until after she bought it, and as a result she had had no knowledge of the clause until the transaction was complete. *Id.* at 389 n. 11. If ever there was a case for stretching the concept of fraud in the name of unconscionability, it was *Shute;* and perhaps no stretch was necessary.

■ Before considering the validity of the forum selection clause at bar, we must consider whether it really is a forum selection clause. The clause certainly is not as clear as it could be. It should just have said, "In the event of litigation or arbitration, the undersigned consents to suit, at Northwestern's option, in Milwaukee County." But this is what it must mean. *Mutual Fire, Marine & Inland Ins. Co. v. Barry,* 646 F.Supp. 831, 833–34 (E.D.Pa. 1986) (construing identical provision); see also *Intermountain Systems, Inc. v. Edsall Construction Co.,* 575 F.Supp. 1195, 1198 (D.Colo.1983); *Richardson Green-*

*shields Securities, Inc. v. Metz,* 566 F.Supp. 131, 133 (S.D.N.Y.1983). There would be no point to a clause that placed venue in Milwaukee County at Northwestern's option but left the defendants free to object that they were outside the court's jurisdiction. On that reading, what did Northwestern gain by inserting the clause in the indemnity agreement?

■ So it is a forum selection clause, after all. Is it a valid one? Concretely, should Northwestern be prevented from enforcing the clause because it is "buried in the fine print" and was not "freely negotiated"?—for this is the only ground on which the defendants attack the validity of the clause, as distinct from trying to interpret it away. *Shute* illustrates the widespread judicial suspicion of the form contract—the dreaded "contract of adhesion," the contract that is offered by the authoring party on a take it or leave it basis rather than being negotiated between the parties. Rakoff, *Contracts of Adhesion: An Essay in Reconstruction,* 96 Harv. L. Rev. 1174, 1242–43 (1983). The suspicion has never crystallized, however, in a rule making such contracts unenforceable, on grounds of fraud or duress or unconscionability or mistake or what have you, or even presumptively unenforceable as urged by Professor Rakoff and others; the facts in *Shute,* as we saw, were special. Although the vagueness of the concept of unconscionability may seem to place contracts of adhesion under a cloud, they are generally upheld against attacks from that direction. *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.,* 811 F.2d 326, 333–34 (7th Cir.1987); *Adams v. Merrill Lynch Pierce Fenner & Smith,* 888 F.2d 696, 700–01 (10th Cir. 1989). "That the agreement was an adhesion contract—of pre-specified form and not actually negotiated—does not lead to the conclusion that it was unconscionable.... [M]ere non-negotiability or inequality in bargaining power do[es] not render an adhesion contract's terms unconscionable." *Harper Tax Services, Inc. v. Quick Tax Ltd.,* 686 F.Supp. 109, 112–13 (D.Md.1988). "The circumstances do indicate an adhesion contract, but mere inequality of bargaining power does not of

itself make every term of the contract unconscionable. The questions are rather whether the parties had a reasonable opportunity to read and understand the term, and whether the term itself is unreasonable or oppressive." *Bastian v. Wausau Homes, Inc.,* 635 F.Supp. 201, 203–04 (N.D. Ill.1986).

■ Perhaps the correct inference to be drawn from these and other cases that might be cited is that "unconscionability" is little more than an umbrella term for fraud, duress, illegality, and violation of a fiduciary relationship—all of which are conventional grounds for invalidating a contract and have nothing special to do with form contracts. Ours is not a bazaar economy in which the terms of every transaction, or even of most transactions, are individually dickered; even when they are, standard clauses are commonly incorporated in the final contract, without separate negotiation of each of them. Form contracts, and standard clauses in individually negotiated contracts, enable enormous savings in transaction costs, and the abuses to which they occasionally give rise can be controlled without altering traditional doctrines, provided those doctrines are interpreted flexibly, realistically. If a clause really is buried in illegible "fine print"—or if as in *Shute* it plainly is neither intended nor likely to be read by the other party—this circumstance may support an inference of fraud, and fraud is a defense to a contract. There was no burial in fine print here. The print is small, but it is not fine; it is large enough that even the pale copies in the appendix on appeal can be read comfortably by the author of this opinion, with his heavily corrected middle-aged eyesight. As the shortest of only six paragraphs, occupying less than a full page of a two-page contract, the forum selection clause is possibly the most, and certainly not the least, conspicuous paragraph; yet the defendants do not suggest that any of the other paragraphs are unenforceable. The clause could of course be made even more conspicuous, but highlighted in this fashion it would throw the other clauses into shadow—inviting litigation over *their* validity.

Could this be a case in which the drafting party has taken advantage of special vulnerabilities known to him to afflict the other party, with the result that what would not be fraud in an ordinary case becomes fraud by virtue of those vulnerabilities? Restatement (Second) of Torts, § 545A, comment a (1977). If the draftsman told a blind man that the contract said thus and so, it would be no defense that the blind man had failed to read the contract. And perhaps most of us are blind when confronted by a parking receipt with disclaimers of liability on the back. There is nothing of that sort here. The defendants are wealthy tax-shelter investors. They knew that by signing the indemnity agreement they were incurring a potential liability to Northwestern. They also knew how great a liability. They had bought their interests in the limited partnership with promissory notes that the partnership wanted to put up as collateral for the loan that it needed. The indemnity agreement in effect empowered Northwestern to enforce the notes against the limited partners in the event that the partnership defaulted on the loan, as it did. Knowing as they did that the agreement imposed a potential liability in the face amount of their notes, it behooved the limited partners to read the agreement with care or show it to their lawyers. If they make a practice of signing contracts without reading them, they must bear the consequences. *United States v. Stump Home Specialties Manufacturing, Inc.*, 905 F.2d 1117, 1120 (7th Cir.1990); *Stanley A. Klopp, Inc. v. John Deere Co.*, 510 F.Supp. 807, 811 (E.D.Pa.1981), aff'd without opinion, 676 F.2d 688 (3d Cir.1982).

Those consequences may seem harsh. The defendants claim that it will be a huge inconvenience for them to defend these suits in Wisconsin. Maybe so. But it is not a gratuitous imposition. For if it proves a huge inconvenience to them to have to trundle up to Milwaukee to attend the trials in these cases (if the cases ever go to trial, which of course most cases do not), it will prove an equally huge convenience to Northwestern to be able to defend these suits in home territory. We may assume, since the market in surety bonds is a competitive one, that the cost savings that accrue to Northwestern from contractual terms that facilitate the enforcement of one of its bonds will be passed on, in part anyway, to the purchaser of those bonds—the enterprise in which the defendants invested—in the form of a lower premium. If so, the defendants were compensated in advance for bearing the burden of which they now complain, and will reap a windfall if they are permitted to repudiate the forum selection clause.

■■■ The clause is enforceable. And this means that it is not to be circumvented by the grant of a motion for a change of venue, a motion that has been filed with but not as yet acted on by the district judge. We held in *Heller*, and we repeat, that the signing of a valid forum selection clause is a waiver of the right to move for a change of venue on the ground of inconvenience to the moving party. 883 F.2d at 1293. If there is inconvenience to some third party of which that third party may not even be aware, or to the judicial system itself, then either party to the suit is free to move for a change of venue. But one who has agreed to be sued in the forum selected by the plaintiff has thereby agreed not to seek to retract his agreement by asking for a change of venue on the basis of costs or inconvenience to himself; such an effort would violate the duty of good faith that modern law reads into contractual undertakings. *AMPAT/Midwest, Inc. v. Illinois Tool Works Inc.*, 896 F.2d 1035, 1041 (7th Cir.1990); Restatement (Second) of Contracts § 205 (1981). A party can seek to rescind a forum selection clause, as the defendants have sought to do here, but if the attempt fails and the clause is held to be valid, then section 1404(a) may not be used to make an end run around it.

The judgments dismissing the suits are reversed and the cases are remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED, WITH DIRECTIONS.