James F. BANTON, Plaintiff,

v.

SCHROEDER MOVING SYSTEMS, INC., Defendant.

UNITED VAN LINES, INC.,
Intervenor/Counterclaimant,
Third Party Plaintiff,

v.

Susan A. BANTON, Third
Party Defendant.

Civ. A. No. 91–C–206.

United States District Court,
E.D. Wisconsin.

Sept. 28, 1992.

See also 827 F.Supp. 1390.

James Vollmar, Waukesha, WI, for plaintiff.

Daniel Ryan, Hinshaw & Culbertson, Chicago, IL, for defendant.

### ORDER

TERENCE T. EVANS, Chief Judge.

Removed to this court from the circuit court for Waukesha County, this is an action for a declaratory judgment that plaintiff James F. Banton is not liable to defendant Schroeder Moving Systems, Inc. for charges incurred in moving his family's household goods from Alabama to Wisconsin. United Van Lines, Inc. has been allowed to intervene in the action and has filed a counterclaim against James F. Banton and a third-party action against Susan A. Banton, who was married to Mr. Banton at the time of the move. United has also filed a motion for summary judgment, seeking judgment from the Bantons, individually and jointly, in the amount of $15,635.25.[1]

Both United Van Lines, Inc. and Schroeder Moving Systems, Inc. are interstate motor carriers of household goods and personal property. Both act under authority of the Interstate Commerce Act. Schroeder, as an agent of United, moved the Bantons' household goods on June 27 through July 1, 1990, from Mountain Brook, Alabama to Neenah, Wisconsin. At the time, Mr. Banton was president of Kurz & Root Company, located in Appleton, Wisconsin.

Prior to the move, Mr. Banton wrote to a representative of Schroeder, Mr. Randy Kressin, authorizing the move. The letter was on Kurz & Root stationery and was signed by Mr. Banton, as president of the company. The letter stated:

This letter serves as authorization to move the belongings of James F. Banton from 2748 Abingdon Road, Mountain Brook, Alabama, to his home at 561 East Wisconsin Avenue, Neenah, Wisconsin. This will be done such that the van will be loaded by midnight June 27, 1990, and be delivered in Neenah no later than Saturday, June 30, 1990.

This will be paid for by Kurz & Root Company and all billings should be done directly to them.

The goods were shipped pursuant to a uniform household goods bill of lading and freight bill. The transportation charges for the move amounted to $15,630.25.

The bill of lading listed James Banton as the "shipper" and as the "consignee." It listed Kurz & Root on the line printed "COMPANY (associated with)." The form contains three signatures, one of which is that of the driver of the truck. The other two are the Bantons' signatures. Susan A. Banton signed the "valuation" section of the form on June 27, 1990. James Banton signed the "delivery acknowledgment" on July 1, 1990.

On the back of the bill of lading, in small but not fine print [see *Northwestern National Ins. Co. v. Donovan*, 916 F.2d 372, 377 (7th Cir.1990)], is the following information:

(a) The shipper, upon tender of the shipment to carrier, and the consignee, upon acceptance of delivery of shipment from carrier, shall be liable, jointly and severally, for all unpaid charges payable on account of a shipment in accordance with applicable tariffs including, but not limited to, sums advanced or disbursed by a carrier on account of such shipment.

---

1. The motion for summary judgment against James F. Banton was filed on June 1, 1992. Susan Banton was served with the third-party complaint on July 23, 1992. United then filed an amended motion for summary judgment, seeking judgment against Susan Banton as well as James

Banton. Under the local rules for this district, Ms. Banton has not yet been required to respond to the motion. I am proceeding with this decision for two reasons: trial is scheduled early in October and I am not entering judgment against Susan Banton.

The extension of credit to either shipper or consignee for such unpaid charges shall not thereby discharge the obligation of the other party to pay such charges in the event the party to whom credit has been extended shall fail to pay such charges.

This provision is taken directly from the Interstate Commerce Commission Household Goods Tariff, Section 1, Item 43.

According to United, and uncontested by the Bantons, although I cannot read this on the photocopy given to me [this I believe to be fine print], paragraph 3 on the front of the bill of lading provides:

If credit is extended by the carrier by agreeing to bill an employer or other party, and in the event that any or all of the charges are not paid, the owner of the goods and/or beneficiary of the services acknowledges he remains primarily liable for payment.

The issue is whether either or both of the Bantons should be held liable for the shipping charges. The situation is a fairly common one in which an employer agrees to pay the moving costs of an employee. A problem arose in this case because the employer was bankrupt and failed to pay.

The factor which indicates the Bantons should not be held liable is that Mr. Banton made clear to Mr. Kressin that Kurz and Root would be responsible for payment. However, the letter falls short of absolving the Bantons from responsibility. The factors which indicate that they (or at least Mr. Banton) should be liable are that the goods shipped were theirs, Mr. Banton was listed on the bill of lading as the shipper, and he signed the form as the consignee. Under the terms of the bill of lading and the tariff, both the shipper and the consignee are responsible for payment. Furthermore, Mr. Banton was the president of a company; he is not an unsophisticated person. He was already in Neenah, working for Kurz and Root and must have known of its financial situation.

Interstate shipping remains a fairly regulated industry. The ICC dictates how tariffs must be handled, and the limited circumstances under which rates can be negotiated.

*See, e.g., Maislin Industries, · U.S. v. Primary Steel, Inc.,* 497 U.S. 116, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990). The terms of bills of lading are also laid out by the agency. For that reason, it is not reasonable to contend that the terms of the bill of lading should not control this transaction. Under those terms, James Banton, who is the shipper and the consignee, is responsible for the shipping charges.

IT IS THEREFORE ORDERED that summary judgment is GRANTED against James F. Banton in the amount of $15,635.25, plus costs.

IT IS FURTHER ORDERED that summary judgment against Susan Banton is DENIED.

IT IS FURTHER ORDERED that trial in this matter is removed from the calendar. A conference call will be held on October 6, 1992, at 10 a.m., to determine whether United wishes to proceed against Susan Banton.