**CONTRAVES INC., Plaintiff,**

v.

**McDONNELL DOUGLAS CORPORATION, Defendant.**

**No. 94–1294–CIV–T–23A.**

United States District Court, M.D. Florida, Tampa Division.

June 23, 1995.

C. Lawrence Stagg, Akerman, Senterfitt & Eidson, P.A., Tampa, FL, for plaintiff.

Richard M. Blau, Holland & Knight, Tampa, FL, Thomas A. Schweich, St. Louis, MO, for defendant.

## ORDER

MERRYDAY, District Judge.

Pursuant to 28 U.S.C. § 1404(a), the defendant moves to transfer this action to New York. The motion is based on a forum selection clause that requires a contractually aggrieved party to assert a claim for relief exclusively in New York. The parties agree that the contract, including the forum selection clause, is valid. Although seeking to enforce its contractual rights, the plaintiff suggests ignoring the forum selection clause because, excepting the contract's venue provision, New York is without any ascertainable connection to either the parties or their dispute. The defendant's motion raises an issue worthy of reflection.[1]

Although the law governing forum selection clauses and Section 1404(a) has become somewhat perplexing, the material facts affecting transfer in this case are straightforward and uncontested. The parties agree that an evidentiary hearing is unnecessary and that the information contained in their papers is sufficient to resolve the defendant's motion. The resolution of this motion is informed most directly by *Stewart Organiza-*

---

1. A connected and equally interesting issue is whether a district court in New York, consequent upon transfer from a district court in Florida, will honor the parties' "governing law" provision, which requires the application of New York law to their dispute. Generally, when a case is transferred pursuant to Section 1404(a), the transferee court applies the substantive law of the transferor court. *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). In a diversity action, the district court applies the forum state's laws, including the forum's choice of law rules. Florida's choice of law rules require application of either Missouri law or Florida law to the question of the enforceability of the parties' governing law provision. Florida appears reluctant to enforce a governing law provision if the chosen state (e.g., New York) has no relation to the parties or their dispute. On the other hand, as discussed in the defendant's papers, New York statutes welcome to New York any substantial commercial dispute based on New York law, regardless of whether a material connection exists between the parties' dispute and New York. At least one court in the Southern District of New York opines that a Section 1404(a) transfer based on a forum selection clause may require the transferee court to disregard the general rule and to apply the law of the transferee state. *Caribbean Wholesales & Service Corp. v. US JVC Corp.*, 855 F.Supp. 627 (S.D.N.Y. 1994).

*tion, Inc. v. Ricoh Corporation,* 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (especially the concurrence of Justice Kennedy); *Northwestern National Insurance Co. v. Donovan,* 916 F.2d 372 (7th Cir.1990) (Posner, J.); *Stewart Organization, Inc. v. Ricoh Corporation,* 810 F.2d 1066 (11th Cir.1987) (especially the concurrence of Chief Judge Tjoflat); and *In re Ricoh Corporation,* 870 F.2d 570 (11th Cir.1989) (Tjoflat, Hill, and Kravitch, JJ.).

■ The plaintiff, a Pennsylvania corporation with its principal place of business in Pittsburgh, Pennsylvania, maintains a regular place of business in Tampa, Florida. The defendant is a Missouri corporation with its principal place of business in St. Louis, Missouri. The parties' contract results from studied negotiations between two presumably sophisticated entities. The contract involves the design and installation of a visual system for an aircraft flight simulator. The contract contemplates performance in Florida, Missouri, and the Republic of China. Most of the probable witnesses and pertinent documents are located in either Missouri or Florida. The contract requires that "[a]ny legal action will be brought in the courts within the State of New York."

*The Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), holds that forum selection clauses are enforceable absent exceptional circumstances. *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988), concludes that enforceability of the parties' contractual choice of forum is a matter of federal law and that the presence of a forum selection clause "figures centrally" in Section 1404(a) analysis. Justice Marshall, suggesting that *Zapata* is merely "instructive" and cautioning that the parties' agreement as to forum receive neither "dispositive consideration" nor "no consideration," states:

> Section 1404(a) directs a district court to take account of factors other than those that bear solely on the parties' private ordering of their affairs. The district court must weigh in the balance the convenience of the witnesses and those public-interest factors of systematic integrity and fairness that, in addition to private con-

cerns, come under the heading of "interest of justice."

487 U.S. at 30, 108 S.Ct. at 2244.

A disinterested reading of Justice Marshall's majority opinion, if applied to the facts of this case, initially prompts the conclusion that transfer is inappropriate. *Stewart,* which appears to condition *Zapata* to some extent, perhaps means that an action with no material nexus to the parties' chosen forum should be retained in a convenient forum, i.e., in a forum where at least some material witnesses and documents are located.

■ A Section 1404(a) motion to transfer visits on the movant the burden of proving the existence of a forum selection clause. The non-movant then has the burden of proving that the clause is either "invalid" or "unreasonable." As discussed in *Zapata,* a forum selection clause is valid absent fraud, undue duress, frustration of purpose, or some other common law doctrine that allows avoidance of an agreement. Assuming a valid agreement, the parties' choice of forum will be enforced as long as it is reasonable. A forum selection clause is reasonable if it neither causes unfair inconvenience to third parties nor implicates an interest of justice.

In this case, the parties agree that the contract, including its forum selection clause, is valid. However, the plaintiff argues that the agreed forum is unreasonable and should be ignored because neither the parties nor their dispute have any connection with New York. All contractual acts either occurred or were to occur in Tampa, St. Louis, or Taiwan. *Neither the parties, the witnesses, nor the evidence is located in New York.* New York is a stranger to this conflict; litigation in New York is convenient to no one. The plaintiff contends that Tampa is the most convenient forum because a significant number of the relevant witnesses and documents are located in Tampa.

The defendant responds that this case involves an international transaction between two prosperous parties able to fend for themselves. The defendant asserts that the contract results from arms-length negotiations and that New York (as would Arizona, Alaska, Maine, or some other domestic venue)

provides the parties with a "neutral" forum. (Contracting parties should remain mindful that a federal district court, regardless of its location, is a neutral forum for the resolution of disputes between citizens of different states—that is precisely the constitutional assignment of a federal district court. If this case remains in Florida, both parties would be treated equally and fairly, regardless of whether one or both parties maintain a regular place of business in Tampa. A federal district court is a court of the United States of America and not a court of any state, county, or city in the United States.)

On the other hand, New York is neutral in the sense that it is markedly, yet perhaps equally, inconvenient to both parties. Justice Marshall's opinion suggests that the parties' agreement should be given little weight when the chosen forum is inconvenient. However, as Chief Judge Tjoflat states in his concurring opinion in the Eleventh Circuit's *en banc* decision in *Stewart*, the parties are conclusively presumed to have exchanged consideration in connection with the negotiated forum selection clause. Chief Judge Tjoflat's observation is clearly applicable in cases involving the selection of a forum convenient to one party and not the other, but this order addresses a somewhat different case. The parties claim no grant of consideration in either direction for acquiring the dubious privilege of litigating in a mutually inconvenient forum. Nonetheless, the exchange of consideration may have occurred during negotiations even if neither party announced its calculations respecting the issue. Maybe—maybe not. The distressing possibility lingers that this issue might require an evidentiary hearing and preparatory discovery in every case similar to this one. To avoid this prospect, Chief Judge Tjoflat characterizes the presumption of consideration as conclusive.

Of course, enforcing valid forum selection clauses increases predictability and certainty, notions essential to the fluidity of our national and international markets and their underlying business transactions. *See Zapata*, 407 U.S. at 13–15, 92 S.Ct. at 1915–16 ("The elimination of all such uncertainties by agreeing in advance on a forum acceptable to both parties is an indispensable element in international trade, commerce and contracting."). As Justice Kennedy states in his admirably concise concurring opinion in *Stewart*, enforcement of the parties' agreement on venue "protects their legitimate expectations and furthers vital interests of the justice system." 487 U.S. at 33, 108 S.Ct. at 2245 (Kennedy, J., concurring).

Adopting the rule suggested by the plaintiff (i.e., district courts should refuse enforcement of otherwise valid forum selection clauses if the chosen forum is unrelated to the dispute) would encourage parties to ignore their contractual obligations and create uncertainty that may impede the flow of commercial transactions. In fact, avoiding a contractual venue clause in circumstances similar to this case may spawn unnecessary litigation in at least two ways. First, disappointed parties may be encouraged to strike preemptively and file a lawsuit locally for the tactical purpose of preventing the opposing party from litigating in the contractually agreed forum. Second, uncertainty in the enforceability of venue clauses encourages the expenditure of resources that might otherwise have been conserved (by which I intend no criticism of counsel, who must avail themselves of available advantages).

In his concurring opinion in *Stewart*, Justice Kennedy states that "[c]ourts should announce and encourage rules that support private parties who negotiate [forum selection] clauses." 487 U.S. at 33, 108 S.Ct. at 2246 (Kennedy, J., concurring). Both Justice Kennedy and Chief Judge Tjoflat advise district courts that they should exercise their discretion so that valid forum selection clauses are given controlling weight in all but the most exceptional cases. The Eleventh Circuit's panel decision in *Ricoh*, in which Chief Judge Tjoflat again participated, granting the writ of mandamus, is well worth a partial restatement:

We conclude that when a motion under section 1404(a) seeks to enforce a valid, reasonable choice of forum clause, the opponent bears the burden of persuading the court that the contractual forum is sufficiently inconvenient to justify retention of the dispute.

In so concluding, we adhere to the reasoning advanced by the Supreme Court in its opinion in this case. *See Stewart,* [487] U.S. [22], 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). In that opinion, the Supreme Court stated that when weighing whether transfer is justified under section 1404(a), a choice of forum clause is "a significant factor that figures centrally in the District Court's calculus." *Stewart,* [487] U.S. at [29], 108 S.Ct. at 2244 (emphasis added). Thus, while other factors might "conceivably" militate against a transfer, *see id.* at [30–31], 108 S.Ct. at 2244, the clear import of the Court's opinion is that the venue mandated by a choice of forum clause rarely will be outweighed by other 1404(a) factors. On remand, therefore, the Court directed the district court to consider "the convenience of a Manhattan forum given the parties' expressed preference for that venue, and the fairness of transfer in light of the forum selection clause and the parties' relative bargaining power." *Id.* at [29], 108 S.Ct. at 2244 (emphasis added). 870 F.2d at 573.

The defendant's motion, if evaluated with the benefit of applicable authority, condenses apparently to the simple question of whether, within the meaning of *Stewart* in its several versions, the contractually selected venue is "reasonable" and, derivatively, whether an "interest of justice" is impinged by the selection. That is an odd ending point because the governing statute speaks of "convenience" and not of "reasonableness." Were the issue "convenience," the motion would be meritless. However, much that is inconvenient may be reasonable. For example (a pertinent one, I suggest), a commercial transaction may result in the selection of an inconvenient forum for litigation for the dispositive reason that the agreed forum was the only one in which the parties could concur and "but for" that selection the balance of the transaction either would not have occurred or the terms would have changed. Therefore, despite the inconvenience to all concerned and despite the language of the statute, no facts appear that render the parties' choice of forum unreasonable and perforce unenforceable under *Stewart* and related cases. No argument is advanced that an interest of justice is impaired by enforcement of the venue clause. No description or prediction of injury to third parties is offered. No argument is presented that trial in New York is a practical impossibility for, or an unconscionable burden on, any party. Therefore, *Stewart* requires granting the motion to transfer.

For these reasons, the motion to transfer is **GRANTED.** However, I acknowledge (1) that the issue presented is novel (and that I experience some uneasiness about the result in light of *Stewart* ), (2) that this order involves a controlling question of law as to which there is substantial ground for difference of opinion, and (3) that an immediate appeal may materially advance the ultimate termination of the litigation.[2] Accordingly, this order is hereby certified to the Eleventh Circuit Court of Appeals pursuant to 28 U.S.C. § 1292(b).[3] The effect of this order is

---

**2.** The novelty of the issue is illustrated by the fact that the plaintiff states that this could be the first time a case has ever been transferred to a forum with no relation to the parties or their dispute, and the defendant states that this could be the first time a district court has refused to enforce a valid forum selection clause negotiated between sophisticated corporate parties. Both may well be right.

**3.** The governing issue is whether parties, validly contracting on matters that include venue, can elect to litigate in a federal forum without any tangible connection to the parties and their dispute. A related issue is whether this venue dispute should be resolved under 28 U.S.C. § 1404(a) (which results in transfer to an inconvenient forum by operation of a statute designed to ensure convenience) or whether the dispute is more properly governed by Rule 12(b)(3), *Federal Rules of Civil Procedure,* and 28 U.S.C. § 1391, which prescribes statutorily proper venues (one of which, in this case, is New York because of the defendant's susceptibility to personal jurisdiction in New York under 28 U.S.C. §§ 1391(a) and (c)). The inherent difficulty in resolving this motion is that sound considerations commend each possible result. Familiarity with modern business practices serves only to magnify and sharpen the competing considerations. For example, few law firms have a well-developed equine practice (some have never heard of an equine practice). But, if a California buyer purchases a thoroughbred from an Ocala, Florida, breeder, can the parties not elect venue in Lexington or Louisville, Kentucky, where many lawyers and judges enjoy a lifetime of experience with the nuances of the equine industry? Surely

stayed for thirty days pending the filing, if any, of a notice of appeal. If not appealed, this action shall be promptly transferred to the City of New York in the Southern District of New York. *See* 28 U.S.C. § 112(b).

ORDERED.

some "interest of justice" is served by that election. Similarly, during negotiations, when the parties presumably are unaware of the forthcoming contract dispute and are consequently without reliable knowledge of the location of witnesses, documents, and the like, are they forbidden to elect an international commercial center as a field on which to conduct future hostilities? I think they are not forbidden. Therefore, in the spirit of Justice Kennedy in *Stewart*, Chief Judge Tjoflat in *Stewart* and again in *Ricoh*, and Judge Posner in *Donovan*, I have deferred to the notion of certainty in commercial relations among parties able to formulate and choose contractual alternatives without the specter of overreaching and without detectable injury to third parties. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991).