Rosemarie MARRA and Marrecon Enterprises, S.A., Appellants/Cross–Appellees,

v.

Vaso PAPANDREOU, et al., Appellees/Cross–Appellants.

Nos. 99–7180, 99–7191.

United States Court of Appeals, District of Columbia Circuit.

Argued May 5, 2000.

Decided June 30, 2000.

David G. Leitch argued the cause for appellants/cross-appellees. With him on the briefs were John G. Roberts, Jr. and Catherine E. Stetson.

Joseph L. Barloon argued the cause for appellees/cross-appellants. With him on the brief were Richard L. Brusca and Rachel Mariner.

Before: SILBERMAN and ROGERS, Circuit Judges, and BUCKLEY, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

The district court dismissed Rosemarie Marra's breach of contract action against the Greek government, concluding that a forum-selection clause in the contract compelled her to sue in Greece. Marra appeals, arguing that the Greek government's actions officially "revoking" the contract as a whole bar it from relying on the forum-selection provision. We affirm.

## I.

In 1994 the Greek Ministry of Tourism announced an international tender for licenses to operate ten casinos in specified locations throughout Greece. A group of investors, including appellant, formed a consortium that submitted a $44 million bid for a license to operate a casino in Flisvos, a location just outside of Athens. The consortium submitted the highest bid for the Flisvos site, and then-Minister of Tourism Dionyssis Livanos issued an official resolution granting the license to the consortium. The license gave the consortium the right to construct and operate a luxury casino complex in partnership with the Greek government, which would receive in exchange both an annual fee and a percentage of the casino's profits each year; after thirty years, ownership of the complex would pass from the consortium to the Greek government. The license also contained a forum-selection clause which (according to the translation offered by Marra and accepted by the district court) provided as follows:

[A]ny dispute or disagreement between the State or the National Tourism Organization and the [consortium] arising from the application of this license, the interpretation or performance of its terms, the extent of the rights and obli-

gations of the State and the holder of the license, and in general any matter that may occur concerning a license, shall be settled by the Greek courts. *Marra v. Papandreou,* 59 F.Supp.2d 65, 76 (D.D.C.1999) (*"Papandreou II"*).

Shortly after the consortium secured the license, matters began to go awry. According to Marra, local political opposition against the construction of a casino at Flisvos developed, prompting Minister Livanos to resign and the Greek government to begin negotiations with the consortium towards relocating the planned casino complex to a different site near Athens. These political complexities were compounded when Prime Minister Andreas Papandreou resigned because of illness, and a new administration took office while relocation negotiations were underway. For reasons that are not entirely clear from the record, the new administration was unfavorably disposed to the consortium's project, and began exploring avenues for "recalling" the license. These efforts resulted in Minister Livanos's successor, appellee Vaso Papandreou, issuing a resolution identifying legal defects in the licensing process, and accordingly "revok[ing], from the time it came into effect" the Ministry of Tourism's earlier action granting the Flisvos license to Marra and her partners.

While most of the partners in the consortium began legal proceedings in Greece challenging the legality of the license revocation, Marra—who owned a nine percent interest in the consortium—pursued a different strategy. She sued in the district court, seeking $1.6 billion in damages from Vaso Papandreou and other Greek government entities ("the Greek government") for breach of contract and unlawful expropriation of property. The Greek government moved to dismiss Marra's claim, arguing, among several alternative grounds for dismissal, that it was immune from suit under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1602–1611. Marra responded that the Greek government's attempts to secure American investment in its casinos brought it within the "commer-

cial activity" exception to the FSIA. *See id.* at § 1605(a)(2). The district court permitted Marra limited jurisdictional discovery—including the right to depose senior Greek government officials—to determine whether the FSIA exception was applicable. The Greek government filed a petition for a writ of mandamus in this court, asking us to vacate the district court's discovery order.

We granted the Greek government's petition. *See In re Papandreou,* 139 F.3d 247 (D.C.Cir.1998) (*"Papandreou I"*). While we agreed with the district court that the information sought from the Greek officials was potentially relevant to determining the validity of the Greek government's FSIA defense, *see id.* at 252–53, we noted that a "district court authorizing discovery to determine whether [FSIA] immunity bars jurisdiction must proceed with circumspection, lest the evaluation of the immunity itself encroach unduly on the benefits the immunity was to ensure." *Id.* at 253. Since the Greek government had asserted several other defenses that were either "jurisdictional or ha[d] jurisdictional overtones," *id.* at 254, we directed the district court to consider such "alternative non-merits routes to dismissal" before reaching the FSIA issue. *Id.* at 256. We also observed that, if the district court were to dismiss Marra's suit on forum non conveniens grounds, any such dismissal "could not ... be subject to conditions, *e.g.,* a condition that defendants promise to submit to the jurisdiction of another court." *Id.* at 256 n. 6.

Following our decision in *Papandreou I,* the Greek government moved to dismiss Marra's complaint on the grounds that her suit was barred by the license's forum-selection clause, and that the District of Columbia was a forum non conveniens for Marra's action. Applying the standard set forth in *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), the district court concluded that the forum-selection provision was enforceable, and that its terms compelled

Marra to file her suit in Greece. *See Papandreou II*, 59 F.Supp.2d at 77. The court also rejected Marra's argument that the Greek government's revocation of the Flisvos license "estopped" it from relying on a forum-selection clause within that license. The district court observed that Marra's position, if accepted, would "put[ ] the cart before the horse," requiring it to adjudicate the merits of the Greek government's substantive defense in order to determine whether the Greek government could rely on the forum-selection clause. *Id.* at 70. Accordingly, the district court dismissed Marra's suit, but added two conditions to the dismissal to ensure that its decision did not prejudice Marra's ability to refile her suit in Greece: the Greek government would have to waive any applicable statute of limitations if Marra filed suit in Greece within six months of the dismissal, and would have to appoint an agent in the United States to receive service of process in the suit. *See id.* at 77. Marra appeals the district court's dismissal of her case. The Greek government cross-appeals, arguing that the conditions imposed by the district court violated our mandate in *Papandreou I*.

## II.

### A.

We have a threshold question: did the district court have jurisdiction to dismiss the case based on the forum-selection clause? In *Papandreou I* we directed the district court to consider alternative defenses before adjudicating the Greek government's FSIA defense. But we recognized the district court's discretion to do so was limited by *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), in which the Supreme Court held that a federal court must establish its jurisdiction to hear a case before adjudicating its merits. We concluded that *Steel Company* compelled the district court to address only "non-merits routes to dismissal," *Papandreou I*,

139 F.3d at 256; *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) (courts have discretion to "choose among threshold grounds for denying audience to a case on the merits"), and considered whether four alternative defenses advanced by the Greek government met that definition. We thought that three of these defenses—standing, personal jurisdiction, and forum non conveniens—were "jurisdictional" in the *Steel Company* sense, while the fourth—the Act of State doctrine—was not. *See Papandreou I*, 139 F.3d at 255–56.

So we now must decide whether the district court's disposition of the case on forum-selection clause grounds was such a "non-merits route to dismissal." To be sure, we did not state that the three threshold defenses discussed in *Papandreou I* were the only options available to the district court. But it could be argued that a forum-selection clause inquiry requires a court to make "an assumption of law-declaring power," *id.* at 255, in a manner that, for instance, a forum non conveniens inquiry does not. For while the validity of a forum–selection clause can turn on factors traditionally associated with forum non conveniens—such as whether the chosen forum is "seriously inconvenient for the trial of the action," *see M/S Bremen*, 407 U.S. at 16, 92 S.Ct. 1907—a court must also address issues that would be conventionally understood as going to the "merits" of a contract dispute. Indeed, in the decision under review the district court examined whether Marra had entered into the license's forum-selection clause voluntarily.[1] *See Papandreou II*, 59 F.Supp.2d at 70–71; *see also M/S Bremen*, 407 U.S. at 15, 92 S.Ct. 1907 (forum-selection clause is valid unless opposing party can show "that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching").

---

1. The district court concluded that Marra had voluntarily entered into the forum-selection provision, a conclusion that she does not challenge in this appeal.

■ But there is considerable weight on the other side of the scale as well. A forum-selection clause is understood not merely as a contract provision, but as a distinct contract in and of itself—that is, an agreement between the parties to settle disputes in a particular forum—that is separate from the obligations the parties owe to each other under the remainder of the contract. *See Northwestern Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 376 (7th Cir. 1990).[2] Thus when a court determines that a forum-selection clause is enforceable, it is not making "an assumption of law-declaring power" vis-a-vis other provisions of the contract. While this does not resolve the *Steel Company* inquiry—it could still be said that a court exercising a law-declaring power with respect to the *forum-selection* provision is problematic—it focuses the question on the clause itself, removing any implication that the district court in assessing the forum-selection clause necessarily also is reaching the "merits" of the parties' substantive claims about the Flisvos license as a whole. Moreover, while the forum-selection clause defense is a creature that has evaded precise classification,[3] most courts and commentators have characterized it as a venue objection analogous to a forum non conveniens motion or motion for transfer of venue under 28 U.S.C. § 1404(a). *See* 15 CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3803.1 (2d ed.1986); *cf. Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (forum-selection clause considered as a factor in a section 1404(a) motion); *Commerce Consultants Int'l, Inc. v. Vetrerie Riunite S.p.A.*, 867 F.2d 697 (D.C.Cir. 1989) (affirming district court's dismissal of a case for improper venue under FED. R.CIV.P. 12(b)(3) after defendants raised forum-selection clause defense). This analogy to venue is sensible enough; as Judge Posner has observed, a forum-selection clause is best understood as a potential defendant's *ex ante* agreement to waive venue objections to a particular forum. *See Donovan*, 916 F.2d at 375–76. Accordingly while the district court's inquiry into the enforceability of the license's forum-selection clause resembled in certain respects a "merits" determination of the sort proscribed by *Steel Company*, there are sound reasons for taking the contrary view.

■ We need not resolve this question, however, because of the Greek government's clarification of its position at oral argument. Counsel explained that the Greek government's reliance on the forum-selection clause in the district court should properly be understood as a waiver of its FSIA defense with respect to the clause. We agree, and reject Marra's description of this as an impermissible "selective waiver" of the Greek government's sovereign immunity prerogatives. If the Greek government were sued by Marra for breach of two different contracts, it certainly would have the prerogative to waive a sovereign immunity defense with respect to one of the contracts and invoke that defense for the other. As we discussed above, a simi-

2. This notion of "severability," first endorsed by the Supreme Court in the arbitration clause context, *see Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), was extended to forum-selection provisions in *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519 n. 14, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974). *See also Haynsworth v. The Corporation*, 121 F.3d 956, 963 (5th Cir.1997).

3. Indeed, there is some doubt concerning the appropriate procedural vehicle for giving effect to a forum-selection provision. *See, e.g., Haynsworth*, 121 F.3d at 961 (noting the "enigmatic question of whether motions to dismiss on the basis of forum-selection clauses are properly brought as motions under FED. R. CIV. P. 12(b)(1), 12(b)(3), or 12(b)(6), or 28 U.S.C. § 1406(a)"); *Frietsch v. Refco, Inc.*, 56 F.3d 825, 830–31 (7th Cir.1995); Leandra Lederman, Note, *Viva* Zapata! *Toward a Rational System of Forum–Selection Clause Enforcement in Diversity Cases*, 66 N.Y.U.L. REV. 422, 432–35 (1991) (observing that defendants "invoke an assortment of rules and concepts"—including subject matter jurisdiction, personal jurisdiction, and venue—to transfer or dismiss cases on forum-selection clause grounds).

lar situation is presented here, since a forum-selection clause, properly understood, is a separate contract in which the parties agree to venue; we therefore see no reason why the Greek government should not be able to waive its FSIA defense with respect to the forum-selection clause, but retain that immunity with respect to the remainder of the license. Therefore the district court had jurisdiction to address the Greek government's forum-selection clause defense.

## B.

 It is clear to us that the forum-selection clause, if enforceable, requires Marra to file her suit in Greece. The clause is broadly written, encompassing (even according to Marra's translation) "any dispute or disagreement" between the parties "arising from the application of this license, the interpretation or performance of its terms ... and in general any matter that may occur concerning a license." Marra points to language later in the clause stating that the licensee agrees to "submit himself to the jurisdiction of the Greek courts," and argues that this sentence "indicates that the parties anticipated the forum–selection clause to apply to actions brought by the *Greek State* against the *licensee* for breach of the terms of the license," and not to suits by Marra against the Greek government. We simply cannot accept that interpretation; nothing in this sentence in any way modifies the broad language that precedes it.[4]

 This brings us to the more difficult issue of the clause's enforceability. In *M/S Bremen*, the Supreme Court announced that forum-selection provisions are presumptively enforceable, jettisoning the longstanding American judicial hostili-

ty to forum-selection clauses as founded in the "parochial concept that all disputes must be resolved under our laws and in our courts." 407 U.S. at 9, 92 S.Ct. 1907; *see also Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer,* 515 U.S. 528, 537–38, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995). Marra does not point to factors typically relied on by litigants seeking to avoid enforcement of forum-selection clauses–for instance, that the clause is the product of fraud or that its enforcement would contravene a strong public policy of the forum in which suit is brought, *see M/S Bremen* 407 U.S. at 10, 15–19, 92 S.Ct. 1907to overcome *The Bremen*'s presumption of validity. Rather, she argues that the Greek government should be estopped from availing itself of a forum-selection clause that is part of a contract that it professes to have "revoked."

Each party's position produces an anomaly. Marra notes that the Greek government's resolution revoking the Flisvos license was retroactive in effect, legally "extinguishing" the license as of the date it issued; if that is so, she asks, how can the Greek government now seek refuge in a provision of a nonexistent license? The Greek government responds that it is no less illogical to allow someone to sue under a contract while at the same time claiming not to be bound by a provision within that contract. Moreover, in the Greek government's view, Marra is trapped in a lose-lose situation in her attempt to pursue litigation in the United States: either the license was indeed lawfully revoked and she has no cause of action, or the license is valid and she is bound by the license's terms to pursue her case in the Greek courts.

---

4. As noted above, Marra's suit also includes an expropriation count. This count, however, simply realleges and incorporates the paragraphs of her complaint pertaining to her breach of contract claim, and adds the following sentence: "By means of their arbitrary, capricious, unjustified and unlawful revocation of plaintiff's license, defendants have expropriated plaintiffs' valuable property rights

without providing prompt, adequate or effective compensation and therefore in violation of international law." Since Marra's expropriation claim is wholly derivative of the Greek government's alleged breach of the Flisvos license, it certainly presents a dispute "concerning a license" that is covered by the forum-selection provision.

■ While there is no entirely satisfactory answer to this conundrum, we think that the Greek government has the stronger position. Marra relies heavily on the implications that flow, under well-settled principles of contract law, from a party's "repudiation" of a contract. Such a repudiation relieves the other party from performing its obligations under that contract, *see* 13 WILLISTON, CONTRACTS § 39:37 (4th ed.2000); to put it another way (and in the way preferred by Marra), once a party repudiates a contract, it has no right to demand performance from the non-repudiating party. This rule, in Marra's view, precludes the Greek government from "revoking" the Flisvos license—and repudiating its obligations to Marra—at the same time that it avails itself of the forum-selection clause.

■ The "repudiation" shoe does not quite fit here, for two reasons. Adherence to the forum-selection clause is not an obligation owed by Marra to the Greek government, but a condition precedent to suit under the contract, binding equally on both parties. This is a distinction with a difference, since the "rationale behind the rule that a repudiation of a contract by one party will excuse the other party from the duty to perform contractual obligations and conditions, is the prevention of economic waste, in the sense that, following a clear repudiation, the other party should not be required to perform the formal, economically wasteful, and useless act of further performing." *Id.* This purpose of preventing "wasteful" and "useless" acts of performance is not served in any way by excusing Marra from compliance with the forum-selection provision. Moreover, the rule urged by Marra is contrary to the conceptual understanding, noted above, of a forum-selection clause as severable from the contract in which it is contained. Therefore while the Greek government's denial of its contractual obligations to Marra relieves her of her duty to perform her side of the contract's terms (for instance, she is no longer obligated to pay her annual license fee), that action does not work a repudiation of the forum-selection clause unless it is specifically directed at the clause itself. Were this not the case, as the Greek government correctly points out, the value of a forum-selection clause would be significantly diminished, since it will often be the case that a plaintiff can plausibly allege that the defendant's non-performance constitutes a "repudiation" of its contractual obligations precluding it from recourse to the clause.

It is therefore understandable that Marra can point to no authority extending this general principle of contract law to preclude a party from relying on a forum-selection clause in a contract. On the contrary, the Second Circuit has rejected this argument in the closely analogous context of a challenge to the enforcement of an arbitration clause in its oft-cited decision in *Kulukundis Shipping Co. v. Amtorg Trading Corp.*, 126 F.2d 978 (2d Cir.1942) (Frank, C.J.). *See also Sky Reefer*, 515 U.S. at 534, 115 S.Ct. 2322 (noting that "foreign arbitration clauses are but a subset of foreign forum selection clauses in general"). In *Kulukundis*, a defendant in a contract action sought to stay the suit pending arbitration pursuant to an arbitration clause in the contract. The plaintiff—like Marra here—responded that the defendant's denial of the contract's existence barred it from recourse to the arbitration clause therein. The Second Circuit rejected the plaintiff's estoppel theory, drawing on a principle of contract law that is echoed before us by the Greek government:

> As Williston remarks: "A person who repudiates a contract wrongfully cannot sue upon it himself, but if he is sued upon it, he can be held liable only according to the terms of the contract. If, therefore, an arbitration clause amounts to a condition precedent ... the defendant can be held liable only if that condition is performed, prevented or waived." Arbitration under the [contract] here was a condition precedent.

*Kulukundis*, 126 F.2d. at 988 (citing 6 WILLISTON, CONTRACTS § 1921 (rev. ed.1938)) (ellipsis added). So too here; under the terms of the Flisvos license,

Marra was obliged to sue in the Greek courts in order to recover for breach of the license. The Greek government wins, in our view, the battle of dueling absurdities.

We might have reached a different conclusion had there been a dispute as to whether the Flisvos license had been voluntarily agreed to by the parties. Then it could be argued—even if one accepts, as we do, the position that a forum-selection clause is severable from the contract containing it—that if the parties never entered into a contract in the first place, they by definition did not agree to the forum-selection clause, either. *Cf. Kulukundis,* 126 F.2d at 986, 988–89 (rejecting estoppel theory, but holding that district court must adjudicate the issue of whether parties entered into an agreement at all before submitting case to arbitrator). But the district court determined, and Marra does not challenge on appeal, that she freely entered into a broadly worded forum-selection agreement; to borrow a formulation from the arbitration clause context, Marra offers no challenge to the "making of the agreement" between the parties to adjudicate their disputes in Greece. *Prima Paint,* 388 U.S. at 404, 87 S.Ct. 1801. To the contrary, the event that supposedly renders the Flisvos license *void ab initio* took place *after* the making of this agreement. If we were to hold that the validity of a contract and that of a forum-selection clause contained within it are unavoidably linked in this situation, then two parties can never agree to a binding provision in a contract, designating a forum for the resolution of disputes that might arise from supervening events calling into question that contract's validity. That outcome could not be squared with the strong presumption in favor of the enforcement of forum-selection clauses established by *M/S Bremen* and subsequent Supreme Court cases.

## III.

■ We now turn, briefly, to the Greek government's cross-appeal. The district court attached two conditions to its dismissal of Marra's suit, both of which were designed to protect her ability to pursue a remedy in Greece; the dismissal required the Greek government both to waive any applicable statute of limitations defense should Marra refile her suit in Greece within six months of the dismissal, and to appoint an agent to receive process in the United States. The Greek government argues that these conditions run afoul of our decision in *Papandreou I,* where we noted that a subsequent district court dismissal of the suit on non-FSIA grounds could not be accompanied by conditions on the Greek government. *See* 139 F.3d at 256 n. 6.

Unlike Marra's appeal, this cross-appeal presents no ontological dilemmas. Indeed, as it turns out, it does not present a question at all. Marra did not file a suit in Greece within the six-month period following dismissal set forth by the district court, and at oral argument she (understandably, since she has not filed suit) disavowed any interest in serving process on the Greek government in the United States. The questions raised by the cross-appeal are therefore moot.

\*　　\*　　\*

For the foregoing reasons, the judgment of the district court is affirmed, and the cross-appeal is dismissed.

*So ordered.*