**FORSYTHE INTERNATIONAL U.K. LTD., a foreign corporation, Plaintiff,**

v.

**M/V RUTH VENTURE, her engines, boilers, tackle, furniture, apparel, etc., in rem, Defendant.**

No. CV 84–708–PA.

United States District Court, D. Oregon.

June 18, 1985.

---

Alex L. Parks, William P. Horton, Michael P. Ryan, Parks, Montague, Allen & Greif, Portland, Or., for plaintiff.

Paul N. Wonacott, Wood, Tatum, Moser, Brooke & Holden, Portland, Ore., for defendant.

PANNER, Chief Judge.

Plaintiff Forsythe International U.K. Ltd. brings this *in rem* action against defendant vessel RUTH VENTURE to enforce an alleged maritime lien. Defendant has moved to dismiss for failure to state a claim. The parties stipulate that submissions attached to their motion papers have the force and effect of affidavits complying with Fed.R.Civ.P. 56(c). I therefore treat defendant's motion as one for summary judgment, Fed.R.Civ.P. 12(b), and grant it.

## FACTS

Plaintiff is a British corporation based in London. Forsythe International B.V. Ltd., plaintiff's predecessor in interest, was a Dutch corporation also based in London. The defendant vessel RUTH VENTURE is of Liberian registry and flies the Liberian flag. The evidence submitted indicates the flag is one of convenience. The RUTH VENTURE is not connected with Liberian maritime commerce, nor have Liberian citizens ever been employed as officers or crew. Similarly, Pearce Shipping Company, the Liberian corporation which owns the RUTH VENTURE and defends on her behalf, appears to have little actual presence in Liberia.

Pearce Shipping chartered the RUTH VENTURE to a Panamanian company,

Maritime Bulkers, which in turn subchartered to Avro Shipping, Ltd., a Liberian corporation. Avro Shipping, acting through an agent, contracted in London with Forsythe for oil bunkers. Forsythe is an oil bunker broker. The bunkers were delivered to the vessel at Richards Bay, South Africa, on or about November 18, 1983. Forsythe has not been paid for the bunkers. In late June 1984 the RUTH VENTURE was arrested in Portland, Oregon.

### DISCUSSION

Forsythe asserts that the law of either the United States or Liberia provides for a maritime lien. The parties agree that the law of England, South Africa, and the Netherlands do not provide a maritime lien or statutory right *in rem* on these facts. Defendant's motion for summary judgment presents a difficult choice of law question. Defendant argues that United States and Liberian law are inappropriate choices.

The issue as to which country's law should apply in this case is a question of law. *Bilyk v. The Vessel Nair*, 754 F.2d 1541 (9th Cir.1985).

Factors applied to a maritime choice of law analysis are set forth in *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), an action brought under the Jones Act. The Court listed seven factors that have been expanded and applied to maritime law generally. *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959); *Gulf Trading and Transportation Co. v. M/V Tento*, 694 F.2d 1191 (9th Cir.1982), *cert. denied*, 461 U.S. 929, 103 S.Ct. 209 (1983).

■ The *Lauritzen* factors, though not exhaustive, include: (1) the place of the wrongful act; (2) the law of the flag; (3) the allegiance or domicile of the injured; (4) the allegiance of the defendant shipowner; (5) the place of the contract; (6) the inaccessibility of the foreign forum; and (7) the law of the forum. The shipowner's base of operation, that is, the center of management and the location most benefit-ed economically by the business of the vessel, is also a useful factor. *Hellenic Lines, Ltd. v. Rhoditis*, 398 U.S. 306, 309, 90 S.Ct. 1731, 1734, 26 L.Ed.2d 252 (1970); *Tento*, 694 F.2d at 1193.

These factors should be applied in a balancing analysis.

[T]he choice of law questions involving maritime liens are to be resolved by weighing and evaluating the points of contract between the transaction and the sovereign legal systems touched and affected by it.... The interests of competing sovereigns may be taken into account without rejecting altogether the contacts the bar and the maritime industry are accustomed to weigh in making the initial determination of governing law.

*Tento*, 694 F.2d at 1195 (footnote omitted).

In *Tento*, two U.S. plaintiffs asserted a maritime lien against a Norwegian vessel arrested in a California port. Plaintiff Gulf Trading asserted a lien for supplies contracted for in New York by the ship's U.S. charterer and delivered in Italy. Plaintiff Permal Shipping had arranged a loan in New York for the ship's Suez Canal passage. Neither plaintiff was paid for their services. The *Tento* court found that United States law applied.

#### 1. *Place of the Wrongful Act.*

■ The oil bunkers were delivered to the RUTH VENTURE in South Africa. The place of delivery is not, in itself, a significant enough contact for South African law to apply. *Tento*, 694 F.2d 1191 (9th Cir.1982). The place of the wrongful act could also be London, where Forsythe has not been paid.

#### 2. *The Law of the Flag.*

The RUTH VENTURE is of Liberian registry and flies the Liberian flag. Great weight has been given the law of the flag in maritime tort cases involving personal injury. *Lauritzen*, 345 U.S. at 584–86, 73 S.Ct. at 929–30. *See also Bilyk*, 754 F.2d at 1543.

In *Phillips v. Amoco Trinidad Oil Co.*, 632 F.2d 82 (9th Cir.1980), the court gave

less weight to the law of the flag. "[T]he law of the flag has traditionally been accorded great weight 'on the pragmatic basis that there must be some law on shipboard, that it cannot change at every change of waters, and no experience shows a better rule than that of the state that owns her.' " 632 F.2d at 87, *citing Lauritzen.* The *Phillips* court emphasized that a choice of law analysis is not a mechanical one. *Id.* at 85. The court gave little weight to the law of the flag where the "vessel" was a stationary oil drilling platform off the coast of Trinidad. *Id.* at 87.

### 3. *Allegiance or Domicile of the Injured.*

Forsythe International U.K. is a British corporation based in London. Forsythe International B.V., though a Dutch corporation, was also based in London.

### 4. *Allegiance of the Shipowner; Base of Operation.*

Pearce Shipping is a Liberian corporation. Defendant has made a showing, however, that Liberia is not the base of operations for the company. No Liberian citizen or resident owns Pearce stock, nor does Pearce conduct business in Liberia.

### 5. *Place of the Contract.*

The contract for oil bunkers between Forsythe and Avro was made in London.

### 6. *Inaccessibility of Foreign Forum.*

The parties do not directly address the accessibility of another forum in their choice of law analyses. Plaintiff's problem is, rather, finding a forum that offers a remedy.

### 7. *Law of the Forum.*

Plaintiff brings this action in the District of Oregon by virtue of the presence of the defendant vessel in this District. In *Lauritzen* plaintiff argued the law of the forum should apply because defendant was present and served in New York. The Court said:

> The purpose of the conflict-of-laws doctrine is to assure that a case will be treated in the same way under the appropriate law regardless of the fortuitous circumstances which often determine the forum. Jurisdiction of maritime cases in all countries is so wide and the nature of its subject matter so far-flung that there would be no justification for altering the law of a controversy just because local jurisdiction of the parties is obtainable.

*Lauritzen,* 345 U.S. at 591, 73 S.Ct. at 932.

There are no contacts that point to the application of United States law in this litigation. The ship's presence in this forum is fortuitous and has no relationship to the action. *See Ocean Ship Supply, Ltd. v. M/V Leah,* 729 F.2d 971, 974 (4th Cir. 1984).

■ I give the contacts to England greater weight than the contacts to Liberia. England has a greater interest in this action. The contract for oil bunkers, from which this action ultimately arises, was made in London. Plaintiff is based in London. Pearce Shipping is incorporated in Liberia but Liberia is not its base of operation. This is not a case where the law of the flag should be given overriding weight, as in an action by a seaman injured on board a vessel which travels in many waters, to many ports.

■ The substantive law of England should apply in this action. Plaintiff argues that if English law applies the doctrine of renvoi should also apply. Under this doctrine, English choice of law rules would apply. These laws direct that the law of the forum applies. Thus, United States lien law would apply.

I decline plaintiff's invitation to apply renvoi. Plaintiff itself notes renvoi has not enjoyed overwhelming acceptance. The doctrine has been rejected by this court on similar facts. *Comoco Marine Services v. M/V El Centroamericano,* 1984 AMC 1434 (D.Or.1983) (dismissed on forum non conveniens grounds).

Plaintiff cites *Marlex Petroleum, Inc. v. The Ship Har Rai,* 1984 AMC 1649 (Can. Fed.Ct.App.1984). In that case, a Canadian court held it could enforce a maritime lien in an *in rem* action brought under United

States law. *Marlex* is distinguishable. Many choice of law contacts in *Marlex* indicated that United States law should apply. Plaintiff was a California corporation doing business in Long Beach. It delivered supplies in Long Beach to the HAR RAI, a vessel of Indian registry, pursuant to a contract also made in Long Beach. After the HAR RAI failed to pay for the supplies, it was arrested on Canada's west coast. *See Marlex*, 1982 AMC 1395 (Can. Fed.Ct.1982), *rev'd*, 1984 AMC 1649.

### CONCLUSION

English law applies to this litigation. The parties agree the law of England does not provide a remedy for plaintiff on these facts. Defendant's motion for summary judgment is GRANTED.