**Maria IOANNIDIS/RIGA, as guardian for Ioannis Ioannidis, Plaintiff,**

v.

**M/V SEA CONCERT, her engines, tackle, apparel and equipment; Golf Maritime Ltd., and Brave Maritime Corporation, Inc., Defendants.**

No. CV–00–693–ST.

United States District Court, D. Oregon.

Jan. 23, 2001.

Michael E. Haglund, Haglund & Kirtley LLP, Portland, OR, for Plaintiff.

ORDER

HAGGERTY, District Judge.

On October 12, 2000, Magistrate Judge Stewart issued a Findings and Recommendation (doc. # 35–1) recommending that the defendant Golf Maritime's Motion to

Dismiss and to Strike (doc. # 10–1) should be GRANTED ON CERTAIN CONDITIONS, as follows:

(1) A WAIVER BY Golf Maritime of any statute of limitations defenses applicable in a foreign forum;

(2) A GENERAL APPEARANCE BY ALL DEFENDANTS AND SUBMISSION TO PERSONAL JURISDICTION in the foreign country selected by plaintiff;

(3) THE POSTING OF FULL SECURITY as required by the foreign court;

(4) ACCEPTANCE OF JURISDICTION by the foreign court;

(5) A STIPULATION BY GOLF MARITIME that all depositions and documentary evidence obtained in the United States are admissible in the foreign court in lieu of live testimony.

Plaintiff filed objections to this Findings and Recommendation. On November 8, 2000, the Findings and Recommendation and objections were referred to this court for review.

When a party objects to any portion of the Magistrate's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the Magistrate's report. 28 U.S.C. § 636(b)(1)(B); *McDonnell Douglas Corp. v. Commodore Business Machines,* 656 F.2d 1309, 1313 (9th Cir.1981), *cert. denied,* 455 U.S. 920, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982).

Plaintiff has filed objections in a timely manner, in accordance with the filing schedule provided by the Magistrate Judge in her Findings and Recommendation. The court has given the file of this case a *de novo* review, and has also carefully evaluated the Magistrate's Findings and Recommendations, the objections, and the Record of the case. For the following reasons, the Magistrate Judge's Findings and Recommendation is adopted.

The facts and underlying issues in this case have been presented thoroughly by Magistrate Judge Stewart in her Findings and Recommendation, and need only brief summary here. Plaintiff, acting as guardian for her husband, Captain Ioannis Ioannidis, brings this action against defendants, the vessel M/V SEA CONCERT, Golf Maritime Ltd., ("Golf Maritime"), and Brave Maritime Corporation, Inc. ("Brave Maritime"), seeking to recover for injuries suffered by her husband aboard the M/V SEA CONCERT. The Captain was injured while working inside a cargo hold of the M/V SEA CONCERT on May 7, 2000, when the vessel was moored in Astoria, Oregon. Plaintiff seeks recovery for maritime negligence, but has conceded that her Second Claim for Relief, alleging a violation of 42 U.S.C. § 1985, should be dismissed. This court has federal question jurisdiction over her claims under 28 U.S.C. § 1331.

Defendant Golf Maritime moved to dismiss, and the Magistrate Judge properly determined that this motion should be treated as a motion under Fed.R.Civ.P. 12(b)(3), and that "the court need not accept the pleadings as true and may consider facts outside of the pleadings." *See* Findings and Recommendation at 2–3. The Magistrate Judge went on to determine that before addressing Golf Maritime's argument for dismissal based on *forum non conveniens,* the court was first required to decide whether plaintiff could state a claim under the Jones Act. The Magistrate Judge concluded that to do so, the seven factors described by the United States Supreme Court in *Lauritzen v. Larsen,* 345 U.S. 571, 583–93, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), had to be applied. Having completed this analysis, the Magistrate Judge recommended that plaintiff could not state a claim under the Jones Act, and that Golf Maritime's motion to dismiss was well-taken.

Plaintiff's objections to this recommendation assert that the Magistrate Judge erred in applying the *Lauritzen* factors because the parties had agreed that Cyprus law would govern in a forum selection clause that was part of the employment

contract the Captain signed previously with defendants. Plaintiff then argues that because Greece is a member state of the European Community and has adopted two international conventions that, according to plaintiff, negate the selection of Cyprus, Greece should be construed as providing the governing law. And, since Greek law incorporates American law, including the Jones Act, plaintiff contends that that the court cannot dismiss her claim for *forum non conveniens.* Plaintiff insists that this analysis is based upon applying the federal common law's choice-of-law rules.

The Magistrate Judge's reasoning on this issue is sound and well-supported by controlling authorities.

*See* Findings and Recommendation at 10–12 ("in cases such as this, courts in the Ninth Circuit make their own choice of law determination, guided by the factors delineated in *Lauritzen*);" citing *Zipfel v. Halliburton Co.,* 832 F.2d 1477, 1486–87 (9th Cir.1987), *cert. denied sub nom. Crowley Maritime Corp. v. Zipfel,* 486 U.S. 1054, 108 S.Ct. 2819, 100 L.Ed.2d 921 (1988), *as modified,* 861 F.2d 565 (9th Cir.1988); *Villar v. Crowley Maritime Corp.,* 782 F.2d 1478 (9th Cir.1986); *Pereira v. Utah Transp., Inc.,* 764 F.2d 686, 688 (9th Cir. 1985), *cert. dismissed,* 475 U.S. 1040, 106 S.Ct. 1253, 89 L.Ed.2d 362 (1986). Plaintiff's objections offer no grounds for rejecting this conclusion.

Alternatively, plaintiff also asserts in her objections that the doctrine of *renvoi* should be applied to reach the conclusion that United States maritime law should apply in this case. The Magistrate Judge noted that this doctrine has been "rejected by federal courts," Findings and Recommendation at 19, and referred to *Sigalas v. Lido Maritime, Inc.,* 776 F.2d 1512, 1518 (11th Cir.1985), in which the court considered a party's attempt to apply Liberian law—"because Liberia by statute has adopted American court-made admiralty law as its own"—as "a renvoi argument" and rejected it. The Magistrate Judge

also explained that this court has also rejected similar arguments. *See Forsythe Int'l. U.K. Ltd., v. M/V RUTH VENTURE,* 633 F.Supp. 74, 77 (D.Or.1985) (argument to apply renvoi rejected; "renvoi has not enjoyed overwhelming acceptance" and has been "rejected by this court on similar facts"). The Magistrate Judge's sound conclusion that plaintiff's alternative renvoi argument is unsupported by any relevant law and contravenes important public policy concerns withstands plaintiff's objections. This court concludes that plaintiff's reliance in her objections upon passages from the Restatement (Second) of Conflict of Laws and upon alternative policy concerns is unpersuasive.

Finally, this court notes that defendants' arguments that plaintiff's objections were untimely are without merit. Plaintiff complied with the specific filing schedule provided by the Magistrate Judge in the Findings and Recommendation.

## CONCLUSION

This court adopts the Magistrate Judge's conclusions that, based upon the application of the *Lauritzen* factors, foreign law applies to plaintiff's claim under maritime law and she fails to state a claim under the Jones Act or other general maritime law. Moreover, plaintiff's claims must be dismissed for *forum non conveniens,* as Greece or Cyprus provide a better forum for this lawsuit, and Golf Maritime's Motions to Dismiss and to Strike (doc. # 10–1) are GRANTED under the conditions established in the Findings and Recommendation, as follows:

(1) a waiver by Golf Maritime of any statute of limitations defenses applicable in a foreign forum;

(2) an agreement from all defendants to make a general appearance in the foreign country selected by plaintiff and to submit to personal jurisdiction in that forum;

(3) Golf Maritime posting whatever security for the vessel the foreign court requires;

(4) the foreign court's acceptance of jurisdiction over this case; and

(5) a stipulation by Golf Maritime that all depositions of witnesses and other documentary evidence obtained in the United States are admissible in a foreign court in lieu of live testimony.

This action is dismissed, subject to compliance with the conditions above.

IT IS SO ORDERED.

## FINDINGS AND RECOMMENDATION

STEWART, United States Magistrate Judge.

### INTRODUCTION

Plaintiff, Maria Ioannidis/Riga ("Ioannidis")[1], acting as guardian for her husband, Captain Ioannis Ioannidis, brings this action against defendants, the M/V SEA CONCERT, Golf Maritime Ltd. ("Golf Maritime"), and Brave Maritime Corporation, Inc. ("Brave Maritime"), seeking to recover for injuries suffered by her husband aboard the M/V SEA CONCERT. Captain Ioannidis allegedly sustained injuries while working inside one of the cargo holds of the M/V SEA CONCERT on May 7, 2000, when the vessel was moored at the Port of Astoria, Oregon. Ioannidis' First Claim for Relief seeks recovery for maritime negligence and her Second Claim for Relief alleges a violation of 42 USC § 1985. This court has federal question jurisdiction over her claims under 28 USC § 1331.

Defendant Golf Maritime's Motions to Dismiss and to Strike (docket # 10) are now before the court. For the reasons stated below, those motions should be granted.

### PRELIMINARY ISSUE

■ In support of their respective positions, both parties have submitted material outside the pleadings. A motion to dismiss under Federal Rule of Civil Procedure ("FRCP") 12(b)(6), however, is limited to the allegations of the complaint which are taken as true and viewed in the light most favorable to the non-moving party. *Cassettari v. Nevada County, Cal.*, 824 F.2d 735, 737 (9th Cir.1987). If the parties submit, and the court considers, material submitted outside the pleadings to support or oppose a motion to dismiss, FRCP 12(b)(6) converts the motion to dismiss to a motion for summary judgment under FRCP 56. *See Rosales v. United States*, 824 F.2d 799, 802 (9th Cir.1987). However, a court may consider materials outside the pleadings related to jurisdictional issues without converting the motion to dismiss to a motion for summary judgment. *Id* at 803. Even if materials outside the pleadings are submitted with a motion to dismiss that addresses non-jurisdictional issues, a court need not treat the motion to dismiss as a motion for summary judgment if the court's legal conclusion does not rely on the outside materials. *Keams v. Tempe Technical Institute, Inc.*, 110 F.3d 44, 46 (9th Cir.1997). Also, if the court considers documents of which it may take judicial notice when ruling on a motion to dismiss, then the motion is not converted to one for summary judgment. *Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir.1986).

■ Although Golf Maritime has not specified under which subsection of FRCP 12(b) it brings its Motion to Dismiss, the Ninth Circuit has held that a motion to dismiss premised on the enforcement of a forum selection clause should be treated as an FRCP 12(b)(3) motion. *R.A. Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir.1996); *Kelso Enter., Ltd. v. M/V WISIDA FROST*, 8 F.Supp.2d 1197, 1201 (C.D.Cal.1998). "Analysis under Rule 12(b)(3) ... permits the district court to consider facts outside the pleadings and is consistent with the Supreme Court standard for resolving forum selection clause

[1]. The Complaint identifies Ioannidis as "Marie," but all subsequent filings, including Ioannidis' own Declaration, identify her as "Maria."

cases." *R.A. Argueta*, 87 F.3d at 324 (citations omitted). Similarly, "in the determination of a motion to dismiss for *forum non conveniens*, the court may consider affidavits submitted by the moving and opposing parties." *Vanity Fair Mills v. T. Eaton Co.*, 234 F.2d 633, 645 (2nd Cir. 1956), citing *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 531, 67 S.Ct. 828, 91 L.Ed. 1067 (1947); *see also Marra v. Papandreou*, 216 F.3d 1119, 1123 (C.A.D.C. 2000) ("while the forum-selection clause defense is a creature that has evaded precise classification, most courts and commentators have characterized it as a venue objection analogous to a *forum non conveniens* motion or motion for transfer of venue").

Therefore, in reviewing Golf Maritime's Motion to Dismiss based on the forum selection clause and *forum non conveniens* doctrine, the court need not accept the pleadings as true and may consider facts outside of the pleadings.

### FACTS

Ioannidis is the wife and guardian of Captain Ioannidis, who at all relevant times was the Captain of the M/V SEA CONCERT, an ocean-going bulk carrier vessel. Complaint, ¶¶ 1, 2; Declaration of Maria Ioannidis/Riga ("Plaintiff's Dec."), ¶ 2. On or about May 7, 2000, while descending a steel ladder to a platform in the vessel's No. 3 hold, Captain Ioannidis fell, injured his head, and became comatose. Complaint, ¶ 4. Ioannidis alleges that the platform was originally constructed with a guard rail to prevent falls, but that the guard rail was missing at the time of the accident. *Id*, ¶ 6.

After the accident, Captain Ioannidis was taken to Legacy Emmanuel Hospital in Portland, Oregon. Plaintiff's Dec., ¶ 7. Ioannidis soon thereafter traveled from Greece to Portland, Oregon, where she remained with her husband for approximately three weeks. *Id*. On or about June 13, 2000, Captain Ioannidis was repatriated by air ambulance from Portland, Oregon, to a rehabilitation therapy facility in Athens, Greece. *Id*, ¶ 9. Captain Ioannidis is now out of the hospital and living at home in Greece, where he continues to experience significant pain and limitations. *Id*. Specifically, he has lost all hearing, experiences memory lapses, has balance problems, and suffers from paralysis on the left side of his face. *Id*.

Ioannidis alleges that defendants Golf Maritime and Brave Maritime were and are owners and operators of the M/V SEA CONCERT. Complaint, ¶ 3. Golf Maritime is a Cypriot corporation and the M/V SEA CONCERT sails under the flag of Cyprus. Affidavit of Daniel F. Knox dated June 15, 2000 ("First Knox Aff"), ¶ 2, Exhibit ("Ex") A. Brave Maritime is a Greek corporation which manages the M/V SEA CONCERT, operates a substantial fleet of vessels, and has a base of operations in Greece. Affidavit of Daniel F. Knox dated August 18, 2000 ("Second Knox Aff"), ¶ 3.

Captain Ioannidis and his wife are Greek nationals. Plaintiff's Dec., ¶ 3; First Knox Aff, ¶ 3. Captain Ioannidis was initially contacted in Greece by the owners of the M/V SEA CONCERT for possible employment aboard their vessel. Plaintiff's Dec., ¶ 4. All the discussions and negotiations related to his employment aboard the M/V SEA CONCERT were conducted in Greece. *Id*. Captain Ioannidis eventually also signed his employment contract, written in Greek, with Golf Maritime in Greece and all of Ioannidis' compensation was paid in Greek Drachmas. *Id*. Captain Ioannidis' employment agreement states in pertinent part:

All rights and obligations of the seaman during the term of the present Agreement and all other conditions of employment, including any claims for illness or accident, shall be governed by the relevant provisions of the Cyprus Law and the Cyprus Collective Agreement of Employment in force, to the exclusion of any foreign legislation. The parties agree as from today and appoint the Courts of Cyprus as the exclusively com-

petent Courts to try an[y] dispute whatsoever arising out of the present contract.

First Knox Aff, Ex B, p. 2.

Golf Maritime, for at least the last two and one-half years, did no business in the District of Oregon and the M/V SEA CONCERT made only three brief trips to the United States in 1998 and 1999. *Id,* ¶ 4 & Ex D. No crew members of the M/V SEA CONCERT are United States citizens. *Id,* ¶ 7 & Ex F. Rather, at the time of Captain Ioannidis' accident, the crew consisted of citizens of Greece, Romania, and Myanmar (formerly known as Burma). *Id.* Before the M/V SEA CONCERT left port in Oregon, Ioannidis' counsel took depositions from the Chief Officer (First Mate), the Chief Engineer, an Engineering Supervisor, and an ordinary seaman who was the only witness to the accident. *Id,* ¶ 8.

### DISCUSSION

Defendant Golf Maritime argues that the Complaint should be dismissed pursuant to the *forum non conveniens* doctrine and a valid forum selection clause designating Cyprus as the chosen forum. In addition, Golf Maritime argues, and Ioannidis concedes, that the Second Claim for Relief should be stricken for failure to state a claim.

### I. *Forum Non Conveniens*

Golf Maritime argues that this case should be dismissed pursuant to the *forum non conveniens* doctrine because Ioannidis fails to state a claim under the Jones Act.[2] Ioannidis' First Claim for Relief does not allege a Jones Act claim, but alleges "Maritime Negligence." However, Ioannidis seeks leave to file an Amended Complaint which includes a Jones Act claim (docket # 19). In addition, the Supreme Court has extended the analysis employed in Jones Act claims to claims brought under general maritime law. *Romero v. International Terminal Operating Co.,* 358 U.S. 354, 382, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959); *Bilyk v. Vessel Nair,* 754 F.2d 1541, 1543 (9th Cir.1985) ("The analysis is the same for determining the applicability of the Jones Act and of general United States maritime law"). Therefore, this court will analyze the First Claim for Relief under Jones Act jurisprudence.

### A. *Whether the Jones Act Applies*

### 1. *Legal Standard*

■ The Ninth Circuit has determined that if a seaman can state a claim under the Jones Act, then he may sue his employer in the United States and the court may not dismiss his claim pursuant to the *forum non conveniens* doctrine. *Creative Technology, Ltd. v. Aztech System Pte, Ltd.,* 61 F.3d 696, 699–700 (9th Cir.1995); *Zipfel v. Halliburton Co.,* 832 F.2d 1477, 1486–87 (9th Cir.1987), *cert denied sub nom. Crowley Maritime Corp. v. Zipfel,* 486 U.S. 1054, 108 S.Ct. 2819, 100 L.Ed.2d 921 (1988), *as modified,* 861 F.2d 565 (9th Cir.1988). If, however, a seaman fails to state a claim under the Jones Act, then the court may dismiss his claim in favor of a more convenient foreign forum under the *forum non conveniens* doctrine.

Therefore, before addressing Golf Maritime's argument for dismissal based on

---

2. The Jones Act, 46 App.U.S.C.A. § 688(a), provides:

Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located.

*forum non conveniens,* this court must first decide whether Ioannidis can state a claim under the Jones Act. Nearly 50 years ago, the Supreme Court identified seven factors which influence whether the Jones Act applies to maritime cases in which more than one nation might claim an interest: (1) the place of the wrongful act; (2) the law of the flag; (3) the allegiance or domicile of the injured party; (4) the allegiance of the shipowner; (5) the place of the seaman's employment contract; (6) the accessibility of a foreign forum; and (7) the law of the forum. *Lauritzen v. Larsen,* 345 U.S. 571, 583–93, 73 S.Ct. 921, 97 L.Ed. 1254 (1953). Of these seven factors, the Court assigned the law of the flag and the allegiance of the shipowner the greatest weight. *Id* at 684–85, 73 S.Ct. 921.

The Supreme Court has since expanded on the *Lauritzen* factors by stating that courts should also consider the shipowner's base of operations. *Hellenic Lines, Ltd. v. Rhoditis,* 398 U.S. 306, 308–09, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970). *Rhoditis* emphasized that the *Lauritzen* factors should not be applied mechanically, but with flexibility. *Id.* at 310, 90 S.Ct. 1731.

> (T)he decisional process of arriving at a conclusion on the subject of the application of the Jones Act involves the ascertainment of the facts or groups of facts which constitute contacts between the transaction involved in the case and the United States, and then deciding whether or not they are substantial. Thus each factor is to be "weighed" and "evaluated" only to the end that, after each factor has been given consideration, a rational and satisfactory conclusion may be arrived at on the question of whether all the factors present add up to the necessary substantiality. Moreover, each factor, or contact, or group of facts must be tested in the light of the under-

lying objective, which is to effectuate the liberal purposes of the Jones Act.

*Id,* n. 4, quoting with approval *Bartholomew v. Universe Tankships, Inc.,* 263 F.2d 437, 441 (2nd Cir.1959).

As succinctly stated by the Ninth Circuit, "[t]he question to be answered by reference to [the *Lauritzen/Rhoditis* factors] is a simple one; are the United State's interests sufficiently implicated to warrant the application of United States law?" *Warn v. M/Y Maridome,* 169 F.3d 625, 628 (9th Cir.), *cert. denied,* 528 U.S. 874, 120 S.Ct. 179, 145 L.Ed.2d 151 (1999).[3]

The Ninth Circuit applies the *Lauritzen/Rhoditis* factors to determine if the Jones Act applies "[w]hen ... a foreign seaman brings an action in the United States against a foreign vessel operator as an employer," as in this case. *Dalla v. Atlas Maritime Co.,* 771 F.2d 1277, 1278 (9th Cir.1985). In addition, the Ninth Circuit has repeatedly explained that when faced with a motion to dismiss for *forum non conveniens* in a Jones Act or other maritime law claim, "a district court is *required* to make a choice of law determination prior to dismissing a case." *Villar v. Crowley Maritime Corp.,* 782 F.2d 1478 (9th Cir.1986) (emphasis added), *cert. dismissed,* 510 U.S. 1044, 114 S.Ct. 690, 126 L.Ed.2d 658 (1994); *see also Zipfel,* 832 F.2d at 1482 ("Before dismissing a case for *forum non conveniens,* a district court must first make a choice of law determination"); *Pereira v. Utah Transp., Inc.,* 764 F.2d 686, 688 (9th Cir.1985) ("We agree with the Fifth, Tenth and Eleventh Circuits that a choice of law determination must be made before a district court dismisses a case under *forum non conveniens* "); *Jose v. M/V FIR GROVE,* 765 F.Supp. 1024, 1030 (D.Or.1991) (citations omitted) ("Because defendants' argument raises the issue of dismissal under the

---

**3.** The *Lauritzen/Rhoditis* factors limit the applicability of the Jones Act, which applies to "*any* seaman who shall suffer personal injury in the course of his employment." As Justice Jackson observed in *Lauritzen,* if the Act were

read literally, "a hand on a Chinese junk, never outside Chinese waters, would not be beyond its literal wording." *Lauritzen,* 345 U.S. at 577, 73 S.Ct. 921.

doctrine of *forum non conveniens*, I must first determine the law to be applied under a choice of law analysis").

### 2. Analysis

The parties sharply disagree about the analysis the court should employ in order to determine whether the Jones Act applies to Ioannidis' claims. First, Ioannidis contends that based on the parties' forum selection clause, Greek law applies and the court need not apply the *Lauritzen/Rhoditis* factors. Although Cyprus is the selected forum in Captain Ionnadis' employment contract, Greece is a member state of the European Community and has adopted two international conventions that, according to Ioannidis, negate the forum selection clause. As a result, Greece is the country with the primary contacts and thus provides the governing law. Furthermore, because Greek law incorporates American law, including the Jones Act, Ioannidis argues that the court cannot dismiss the Jones Act claim for *forum non conveniens*. In the alternative, Ioannidis argues that under a *Lauritzen/Rhoditis* analysis, the court must apply United States law.

Golf Maritime responds that this court must disregard the forum selection clause and instead apply the *Lauritzen/Rhoditis* factors which require this court to conclude that foreign law (either Greek or Cypriot), rather than the Jones Act, applies. At that point, according to Golf Maritime, this court is free to dismiss this case for *forum non conveniens*.

### a. Applicability of Lauritzen/Rhoditis Factors

Essentially, Ioannidis argues that her choice of law analysis should replace the court's own choice of law determination mandated by the Supreme Court in *Lauritzen* and numerous subsequent Ninth Circuit decisions. In support of this contention, Ioannidis cites one case, *Neely v. Club Med Management Services, Inc.*, 63 F.3d 166, 176 (3rd Cir.1994). *Neely*, however, does not support Ioannidis' contention. *Neely* discussed whether the *Lauritzen/Rhoditis* choice of law determination involves subject matter jurisdiction and found that "the multi-factored analysis of *Lauritzen, Romero*, and *Rhoditis* is not to be used to determine whether a district court has subject matter jurisdiction over suits brought under the Jones Act or the general maritime law." *Id* at 177. In contrast, the issue in this case does not involve subject matter jurisdiction, but rather whether Ioannidis states a claim under the Jones Act:

> [W]here a court's choice of law analysis using the *Lauritzen* factors indicates that foreign law, rather than the Jones Act, is applicable to a party's claims, the court's order will be treated, on appeal, as a dismissal for failure to state a claim, rather than a dismissal for lack of subject matter jurisdiction.

*Warn,* 169 F.3d at 628.

This court has been unable to find any support from any circuit for Ioannidis' contention that this court may bypass the *Lauritzen/Rhoditis* factors in discussing whether the Jones Act applies to this case. She has not cited a single case that unequivocally substitutes a choice of law analysis under another country's laws for the choice of law analysis dictated by *Lauritzen*. Instead, in cases such as this, courts in the Ninth Circuit make their own choice of law determination, guided by the factors delineated in *Lauritzen* and *Rhoditis*. *See e.g., Zipfel,* 832 F.2d at 1482; *Villar,* 782 F.2d at 1480–82; *Pereira,* 764 F.2d at 688.

In fact, *Rhoditis,* which applied the *Lauritzen* factors, involved a forum selection clause. The plaintiff was a Greek seamen who had been injured upon a Greek flag vessel managed by a Greek corporation and who had signed a contract of employment providing that all claims arising out of the contract were to be adjudicated by a Greek court applying Greek law. However, 95% of the stock of the corporation was

owned by a United States domiciliary who managed the corporation from a New York office. The Court held the Jones Act applicable because the defendant's "base of operations" was in the United States. In reaching that conclusion, it found that:

[t]he flag, the nationality of the seaman, the fact that his employment contract was Greek, and that he might be compensated there are in the totality of the circumstances of this case minor weights in the scales compared with the substantial and continuing contacts that this alien owner has with this country. If ... the liberal purposes of the Jones Act are to be effectuated, the facade of the operation must be considered as minor, compared with the real nature of the operation and a cold objective look at the actual operational contacts that this ship and this owner have with the United States.

*Rhoditis,* 398 U.S. at 310, 90 S.Ct. 1731.

■ The *Lauritzen* choice of law analysis limits the broad language of the Jones Act to cases in which the injured seaman is employed in a substantially American operation. Therefore, this court must apply the *Lauritzen/Rhoditis* factors to determine whether the M/V SEA CONCERT and its owner, Golf Maritime, Inc. have sufficiently substantial contacts with the United States such that the Jones Act, rather than foreign law, applies.

### b. Application of Lauritzen/Rhoditis Factors

### i. The Place of the Wrongful Act

The first *Lauritzen* factor is the place of injury. Captain Ioannidis was injured while the M/V SEA CONCERT was at anchor in Astoria, Oregon. Thus, this factor points towards application of the Jones Act.

### ii. The Law of the Flag

The second factor, the flag of the vessel, points towards Cyprus since the M/V SEA CONCERT sails under the flag of Cyprus. According to the Supreme Court, this factor is of "cardinal importance." *Lauritzen,* 345 U.S. at 584, 73 S.Ct. 921.

Ioannidis argues convincingly that this factor should perhaps be accorded less weight in light of the overwhelming tendency towards so-called "flags of convenience" to enable vessels to escape the more stringent labor, safety, and environmental regulations imposed by some countries on vessels that fly their flag. These "flag of convenience" vessels often have no connection to the country whose flag they fly, other than an annual payment to secure the right to fly the flag. Were that the case here, this court might be persuaded to accord this factor less weight, and to weight more heavily the allegiance of the vessel, its owners, and their base of operation. The M/V SEA CONCERT, however, both flies the flag of Cyprus and is owned by a Cypriot corporation.

Moreover, even were this court tempted to discount this factor, the Ninth Circuit has recently reiterated the great weight this factor deserves. "[T]he only factor we have considered potentially dispositive is the law of the flag, recognizing that '*Lauritzen* itself firmly mandates that the law of the flag presumptively controls, unless other factors point decidedly in a different direction.'" *Warn,* 169 F.3d at 629, quoting *Bilyk,* 754 F.2d at 1545.

### iii. The Allegiance or Domicile of the Injured Party

According to the Ninth Circuit, the citizenship or domicile of the plaintiff, is an "important" consideration. *Pereira,* 764 F.2d at 689. Though Captain Ioannidis is a Greek citizen, Ioannidis argues in her supplemental brief that a treaty between Greece and the United States mandates that he be treated as though he were an American citizen. The treaty, a variety of the commonplace "most favored nation" treaty, provides in relevant part that:

Nationals and companies of either Party shall be accorded national treatment and most-favored-nation treatment with respect to access to the courts of justice

and to administrative tribunals and agencies within the territories of the other Party, in all degrees of jurisdiction, both in pursuit and in defense of their rights.

Treaty Between the United States of America and Greece Regarding, Friendship, Commerce and Navigation, Art VI(1), August 3, 1951, US–Greece, 5 UST 1829.

Ioannidis cites to *Alcoa S.S. Co., Inc. v. M/V Nordic Regent,* 654 F.2d 147 (2nd Cir.1980) and *Irish Nat'l Ins. Co., Ltd., v. Aer Lingus Teoranta,* 739 F.2d 90 (2nd Cir.1984) as support for this theory. Neither of these cases involved a choice of law analysis applying the *Lauritzen/Rhoditis* factors. Instead, they held that based on international treaties, the court should apply the same *forum non conveniens* standard to a foreign plaintiff as to a United States citizen. Certainly, neither case cited by Ioannidis stands for the proposition that Captain Ioannidis should now be considered an American citizen under this *Lauritzen* factor.

Indeed, to hold that Captain Ioannidis is entitled to special consideration by virtue of this treaty would render meaningless this *Lauritzen* factor. Most favored nation treaties are extremely common. *Alcoa* noted for example, that between 1946 and 1953 alone, the United States concluded nine bilateral treaties which provided for access to each other's courts on a "national treatment" basis. *Alcoa S.S. Co.,* 654 F.2d at 152 n. 6. Instead, courts look to the actual citizenship or residency of the injured seaman, because "[e]ach nation has a strong interest in protecting its citizens from being 'maimed or disabled.' " *Villar,* 782 F.2d at 1481, quoting *Lauritzen,* 345 U.S. at 586, 73 S.Ct. 921.

Therefore, Captain Ioannidis should be considered a Greek citizen for purposes of the *Lauritzen* analysis, and as such, this particular factor weighs against application of the Jones Act.

### iv. The Allegiance of the Shipowner

The fourth factor, the allegiance of the shipowner, also weighs against application of American maritime law. The M/V SEA CONCERT was owned by a Cyprus corporation and managed by a Greek corporation.

Courts, however, have cautioned that a factual disposition on this issue "may be misleading" because " 'it is common knowledge that in recent years a practice has grown, particularly among American shipowners, to avoid stringent shipping laws by seeking registration eagerly offered by some countries.' " *Pereira,* 764 F.2d at 689, quoting *Lauritzen,* 345 U.S. at 587, 73 S.Ct. 921. In this case, however, the parties have not produced any evidence indicating that the M/V SEA CONCERT is owned by a shell Cypriot corporation designed to conceal the true owners' nationality. Likewise, neither party has introduced evidence that the management company is anything other than a wholly Greek corporation. Therefore, this court has no reason to suspect that the M/V SEA CONCERT is anything but Cypriot-owned and Greek-managed and need not undertake to pierce the Cypriot corporate veil in search of American shareholders.

### v. The Place of the Seaman's Employment Contract

The fifth factor, the place of the employment contract, "is given little or no weight in maritime tort choice of law determinations since in most instances the location is fortuitous." *Villar,* 782 F.2d at 1481, citing *Lauritzen,* 345 U.S. at 588, 73 S.Ct. 921. Be that as it may, this is yet one more factor that weighs against imposition of the Jones Act in this case. Captain Ioannidis negotiated and signed his employment contract in Greece; the employment contract was written in Greek; and Captain Ioannidis was paid in Greek currency.

### vi. The Accessibility of a Foreign Forum

The sixth factor, the accessibility of a foreign forum, relates to issues such as expense, loss of time, and difficulty of travel. *Lauritzen*, 345 U.S. at 589–90, 73 S.Ct. 921. Once again, this factor weighs against application of the Jones Act. Either Greece or Cyprus is more accessible to Captain Ioannidis and his wife, who are residents of Greece and currently domiciled in that country. Presumably, many of the witnesses and records are to be found at the corporate headquarters in Cyprus or at the management company's office in Greece. Depositions of witnesses in the United States can be taken here, or the witness can fly to Greece or Cyprus to testify at trial. Likewise, records and evidence in the United States can be inexpensively transported to either Greece or Cyprus.

### vii. The Law of the Forum

The seventh and last *Lauritzen* factor, the law of the forum, might weigh in favor of the Jones Act because Ioannidis has jurisdiction in this court over Golf Maritime. However, "[a]s stated in *Lauritzen*, the fact that an American forum has perfected jurisdiction over the parties is no justification for imposing American law on a case that may have little connection to the United States." *Pereira*, 764 F.2d at 689, citing *Lauritzen*, 345 U.S. at 590–92, 73 S.Ct. 921. The Ninth Circuit has recently stressed yet again the *de minimis* character of this factor, pointing out that "*Lauritzen* indicates that the law of the forum is largely irrelevant." *Warn*, 169 F.3d at 628 n. 2.

### viii. The Shipowner's Base of Operations

The eighth factor, added by *Rhoditis*, 398 U.S. at 309–10, 90 S.Ct. 1731, is the shipowner's "base of operations." This factor includes the base of operations of both the shipowners and the vessel itself. *Villar*, 782 F.2d at 1482, citing *Nicol v. Gulf Fleet Supply Vessels, Inc.*, 743 F.2d 289, 296 (5th Cir.1984).

Here, the parties have not identified the owner's base of operations, but the M/V SEA CONCERT is owned by a Cypriot corporation. As to the vessel, Golf Maritime asserts that it has very little contact with the United States. The M/V SEA CONCERT rarely visits this country and for at least the last two and one-half years, did no business in the District of Oregon and made only three brief trips to the United States in 1998 and 1999. Certainly, it cannot be said that such insubstantial contacts produce an American "base of operations." Where courts have found an American base of operations, the ship and/or shipowner has had extensive contacts with this forum. For example, in *Gonzalez v. Naviera Neptuno*, 832 F.2d 876, 880 (5th Cir.1987), the court actually reversed the district court's conclusion that the base of operations was in the United States because the fact that the company's vessels called often on United States ports and carried goods back and forth to the United States did not make the United States the company's base of operations. *Id* at 880–81.

Therefore, the base of operations of both vessel and owner is one more factor that weighs in favor of imposing the law of either Greece or Cyprus.

### ix. Conclusion

As explained by the Ninth Circuit, the *Lauritzen/Rhoditis* factors enable courts to balance the interests of different countries in having their law apply to a seaman's claim. *Phillips v. Amoco Trinidad Oil Co.*, 632 F.2d 82, 84–86 (9th Cir.1980), *cert denied sub nom., Romilly v. Amoco*, 451 U.S. 920, 101 S.Ct. 1999, 68 L.Ed.2d 312 (1981). The Ninth Circuit has consistently weighed all eight of the *Lauritzen/Rhoditis* factors to determine which country has the strongest interest in having its law apply to the dispute, giving the greatest weight to the law of the flag, the shipowner's base of operations, and the citizenship of the seaman. *See Warn*, 169

F.3d at 628–29; *Dalla*, 771 F.2d at 1277–79; *Pereira*, 764 F.2d at 688–89; *Bilyk*, 754 F.2d at 1541; *Rodriguez*, 703 F.2d at 1072–73; *Phillips*, 632 F.2d at 86–87.

In this case, six of the eight factors weigh against application of the Jones Act. The injured seaman is a Greek citizen; the vessel flies the flag of Cyprus; the owners are Cypriot and the managers are Greek; the employment contract was entered into in Greece; Greece or Cyprus are not necessarily inconvenient forums; and the United States is not a base of operations for either the vessel or owner. In fact, only two of the *Lauritzen/Rhoditis* factors point towards application of the Jones Act. The first, the law of the forum, is "largely irrelevant," and the second, the place of the accident, is "typically not emphasized because vessels frequently navigate over a large number of waters that are subject to a variety of different legal authorities." *Villar*, 782 F.2d at 1480, citing *Lauritzen*, 345 U.S. at 583–84, 73 S.Ct. 921. Other plaintiffs, with far more contacts with the United States, have repeatedly been turned away by courts in this circuit.

For example, in *Warn*, the British, Greek, and German seamen on a British-flagged ship owned by a British corporation were killed in Greek waters. The court found that even assuming that the vessel's base of operations was in the United States, "the weight of the *Lauritzen* factors indicates that foreign law is applicable rather than the Jones Act." *Warn*, 169 F.3d at 629.

Similarly, in *Villar*, a Philippine seaman on a Philippine-flagged vessel owned by a United States corporation with its base of operations in the United States was injured in Saudi Arabian waters. The court gave the most weight to the law of the flag and the allegiance of the injured seaman, both of which pointed to the Philippines. The court discounted the importance of the shipowner's base of operations and stated that even if that base of operations were in the United States, "that alone is not a sufficient basis to apply the Jones Act." *Villar*, 782 F.2d at 1482.

In *Bilyk*, a United States citizen on a Mexican-flagged vessel was injured while in international waters. The vessel's owners and shareholders were Mexican citizens; Mexico was not an unduly onerous forum, and the employment contract was entered into in Mexico. The court found that the plaintiff's American citizenship, the vessel's occasional docking in San Diego for fuel and repairs, and the owners' bank account in San Diego were insufficient to justify application of the Jones Act.

Lastly, in *Rodriguez*, the court held that United States law did not apply even though the company earned almost $100,000,000 in income from ships which called in United States ports; almost of the voyages of the vessel on which the plaintiff worked involved contact with United States ports; the shipowner had three representatives in the United States; the shipowner had an operating manager in the United States; the ship owner's letterhead listed a San Francisco address; the shipowner had an office and telephone number in San Francisco; the ship owner advertised in United States publications; and the seaman was injured while in the port of San Francisco. Despite all of these connections to the United States, the Ninth Circuit affirmed the dismissal of the plaintiff's Jones Act claim because the seaman was Colombian; the ship flew the Colombian flag; and the ship owner's overall base of operations was Colombia.

Here, only two very insignificant factors indicate that the Jones Act should be applied. Instead, the remaining factors, including the three "cardinal" factors, all indicate that foreign law should apply. Therefore, after examining all the factors necessary to a choice of law determination under *Lauritzen* and *Rhoditis*, this court must conclude that as between foreign law and the Jones Act, foreign law applies to Ioannidis' claim.

### c. *Doctrine of Renvoi*

▮ Ioannidis, however, argues that even if the court were to determine through an application of the *Lauritzen/Rhoditis* factors that Greek law applies, then United States law, including the Jones Act, nevertheless applies because of its incorporation by Greek law. Golf Maritime responds that Ioannidis is attempting to raise the "doctrine of renvoi," which has been universally rejected by federal courts.

In *Sigalas v. Lido Maritime, Inc.*, 776 F.2d 1512 (11th Cir.1985), the plaintiff sought, through the *Lauritzen/Rhoditis* factors, an application of Liberian law. The court stated, "[t]his is convenient for her, because Liberia by statute has adopted American court-made admiralty law as its own. Thus she presents us with a renvoi argument—apply the law of Liberia which in turn directs us to our own substantive jurisprudence." *Id* at 1518. The Eleventh Circuit rejected the argument without discussion.

For her part, Ioannidis cites one case in support of application of the renvoi doctrine, *Fisher v. Agios Nicolaos V*, 628 F.2d 308 (5th Cir.1980). *Fisher*, however, did not address the plaintiff's renvoi doctrine argument. Applying the *Lauritzen/Rhoditis* factors, the court found in large part that the defendant's substantial base of operations in the United States sufficed for an application of the Jones Act. *Id.* at 316–18. It then explained:

> We need not reach the plaintiff's alternative contention: Even if American law were not applicable under the *Lauritzen–Rhoditis* tests, the Greek law—if applicable to the present accident— would still require a determination by reference to American law.

*Id* at 318.

In contrast, in *Forsythe Int'l. U.K. Ltd., v. M/V RUTH VENTURE*, 633 F.Supp. 74 (D.Or.1985), the court addressed and soundly rejected the plaintiff's renvoi argument. The plaintiff argued that English choice of law rules would result in application of the law of the forum, the United States. Judge Panner declined "plaintiff's invitation to apply renvoi. Plaintiff itself notes renvoi has not enjoyed overwhelming acceptance. The doctrine has been rejected by this court on similar facts." *Id.* at 77.

This court, as did *Forsythe*, must reject Ioannidis' attempts to breathe life into this moribund theory. First, not only is Ioannidis' argument unsupported by any relevant law, but it contravenes important public policy concerns. For example, if her argument were correct, then whenever an American court found Greek law controlling in a maritime case, the American court would have to retain the case. In fact, any other injured seaman from a country that adopted United States maritime law would also potentially be able to bring claims otherwise precluded by *Lauritzen* and *Rhoditis*. In sum, the renvoi doctrine would grant foreign seamen *carte blanche* to evade the judicial limitations imposed by *Lauritzen* and *Rhoditis*.

Second, Ioannidis' argument requires this court to make a determination that a Greek court would apply United States maritime law in a tort case between a Greek citizen and Cypriot and Greek defendants occurring in United States waters. This court would need to sift through decisions of the foreign court and/or rely on affidavits from foreign counsel, an exercise in comparative international law that *Lauritzen* tried to avoid. Here, Golf Maritime disputes the underlying premise of Ioannidis' renvoi argument, that Greek law would incorporate American law including the Jones Act. Though Ioannidis' Greek-law expert opined that Greek courts would apply American maritime law in this case, Golf Maritime's Greek-law expert disagrees. He argues convincingly that although formerly that may have been the law, at present Greek courts would apply Greek law. While the opinion of Golf Maritime's expert is not dispositive on this issue, the dueling affida-

vits of Greek experts in this case further illustrates the difficulties that may arise when a district court in this county attempts to discern the law of a foreign court.

Ultimately, this court need not decide whether Greek or Cypriot law should apply in this case. Instead, the Ninth Circuit has explained that "[f]or the purpose of the *forum non conveniens* analysis, it is enough to conclude that the United States does not have a sufficient interest to require applying American law." *Villar,* 782 F.2d at 1482.

Here, either the law of Greece or Cyprus should control and Ioannidis' renvoi argument should be rejected. Thus, Ioannidis cannot state a claim under the Jones Act and this court may proceed to address Golf Maritime's *forum non conveniens* argument.

### B. Whether the United States is a Convenient Forum

#### 1. Legal Standard

 *Forum non conveniens* is a common law doctrine that allows a court to decline to exercise jurisdiction where litigation in the forum would be seriously inconvenient for one of the parties and a more convenient forum is available elsewhere: "At bottom, the doctrine of *forum non conveniens* is nothing more or less than a supervening venue provision, permitting displacement of the ordinary rules of venue when, in light of certain conditions, the trial court thinks that jurisdiction ought to be declined." *American Dredging Co., v. Miller,* 510 U.S. 443, 453, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994). Federal rather than state law governs a motion invoking the *forum non conveniens* doctrine. *Ravelo Monegro v. Rosa,* 211 F.3d 509, 511 (9th Cir.2000).

 The party seeking dismissal on *forum non conveniens* grounds has the burden of establishing that: (1) an adequate alternative forum exists; and (2) the balance of relevant private and public interest factors favors dismissal. *Creative Technology,* 61 F.3d at 699. Dismissal for *forum non conveniens* is an "exceptional tool to be employed sparingly." *Ravelo Monegro,* 211 F.3d at 514.

#### 2. Preliminary Issues

##### a. Ioannidis' Choice of Forum

Before addressing whether Golf Maritime has established that Ioannidis has an alternative forum and that the balance of private/public interests favors dismissal, this court must address several preliminary issues. The first issue involves the weight to be granted to Ioannidis' choice of forum. "Generally, Plaintiff is entitled to its choice of forum absent factors weighing strongly in favor of transfer." *Magellan Real Estate Inv. Trust v. Losch,* 109 F.Supp.2d 1144, 1148 (D.Ariz.2000), citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). A foreign plaintiff's choice of forum, however, is entitled to less deference than that of an American citizen. *Ravelo Monegro,* 211 F.3d at 514 (cautioning, however, that "less deference is not the same thing as no deference").

Ioannidis argues that due to the treaty between the United States and Greece discussed above, her choice of forum must be accorded the same weight as that given an American citizen. In support, she cites *Alcoa* in which the court rejected a *forum non conveniens* analysis that was weighted heavily towards retention of cases when the plaintiff was an American citizen. Instead, the court opted in favor of a more uniform standard. *Alcoa S.S. Co., Inc.,* 654 F.2d at 152–53. The court did so in part because of treaties like the one cited by Ioannidis that include a clause providing for "national treatment" of each other's citizens. It explained that if it crafted a preferential, "vexatious" rule for American citizens, "the courts either would be obliged to apply this same vexation standard to foreign nationals who are the beneficiaries of such clauses, thus bar-

ring dismissal for all practical purposes and crippling the concept of *forum non conveniens,* or they would have to do violence to our treaty obligations." *Id.* at 153.

Here, due to the treaty between the United States and Greece, and guided by the reasoning in *Alcoa,* Ioannidis' choice of forum is accorded the same weight as that of an American citizen.

### b. Choice of Law

Next, before dismissing a case on the ground of *forum non conveniens,* a court must first make a choice of law determination. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254, 102 S.Ct. 252, 70 L.Ed.2d 419 n. 22 (1981); *Creative Technology,* 61 F.3d at 699–700. This determination is needed only in order to conclude that the parties have not chosen to apply laws that circumvent the *forum non conveniens* doctrine by mandating venue in a particular court. *Gemini Capital Group, Inc. v. Yap Fishing Corp.,* 150 F.3d 1088, 1092 (9th Cir.1998). "For example, certain federal statutes such as the Jones Act mandate venue in United States district courts." *Magellan,* 109 F.Supp.2d at 1149, citing *Creative Technology,* 61 F.3d at 699–700. This court has already determined that foreign law applies and that Ioannidis fails to state a claim under the Jones Act or other general United States maritime law.

### c. Choice of Forum Clause

Finally, the court must consider the forum selection clause entered into between Captain Ioannidis and Golf Maritime. As discussed below, Ioannidis argues that this clause is rendered unenforceable by European Union Conventions and Greek law. For purposes of this argument only, the court will presume that such law does in fact negate the mandatory nature of the forum selection clause. Therefore, this court will accord the forum selection clause no weight in the following *forum non conveniens* analysis. *See Magellan,* 109 F.Supp.2d at 1149 (stating that when a forum selection clause is merely permissive, "the standard approach to the issue of *forum non conveniens* is employed").

### 3. Adequate Alternative Forum

Having decided the preliminary issues, this court must address the substantive *forum non conveniens* analysis. The first step involves a determination of whether an adequate alternative forum exists. *Creative Technology,* 61 F.3d at 699. "Ordinarily, this requirement will be satisfied if the defendants are 'amenable to service of process in the alternative forum.'" *Magellan,* 109 F.Supp.2d at 1149–50, quoting *Creative Technology,* 61 F.3d at 701.

Here, either Greece or Cyprus is an appropriate forum. Ioannidis does not argue that the law of Greece or Cyprus would deny her of a remedy. Rather, both forums offer comparable or better remedies for the injuries suffered by Captain Ioannidis. Golf Maritime, meanwhile, has offered to make itself amenable to service in either Greece or Cyprus.

### 4. Private and Public Interest Factors

Cyprus or Greece being acceptable alternative forums, this court must proceed to balance the private and public interest factors as described by the Supreme Court in *Gilbert,* 330 U.S. at 503, 67 S.Ct. 839.

### a. Private Factors

The private interests that must be balanced include: (1) relative ease of access to sources of proof; (2) the availability of compulsory process to obtain attendance of hostile witnesses, and cost of transporting willing witnesses; (3) possibility of viewing subject premises; and (4) "all other factors contributing to an expeditious and inexpensive trial." *Gemini Capital,* 150 F.3d at 1093; citing *Creative Technology,* 61 F.3d at 703; *Zipfel,* 832 F.2d at 1485.

#### i. Access to Sources of Proof

Captain Ioannidis, his wife, and Brave Maritime are in Greece. In addition, the

M/V SEA CONCERT's owners are located in Cyprus. Records relating to the M/V SEA CONCERT, its upkeep, and maintenance, are presumably to be found at the corporate domicile in Cyprus. If not, this information is likely to be in the hands of the managing corporation in Greece. Some of the hospital records are undoubtedly in this country, as are the records of the depositions and the other evidence collected by Ioannidis' counsel. These documents, however, can be delivered to either Greece or Cyprus. Golf Maritime's Greek expert states that evidence and depositions from the United States are admissible in Greek courts. Therefore, access to sources of proof points to trial in either Greece or Cyprus.

### ii. Availability of Compulsory Process

Witnesses may be a problem no matter where this case is tried. While both Captain Ioannidis and his wife are in Greece, many of the seamen witnesses are presumably scattered across the high seas. Ioannidis' counsel, however, took depositions from the relevant seamen, and these depositions can be introduced at trial in Greece. Similarly, any medical witnesses from the United States or Coast Guard employees could presumably be deposed in this country or travel to the alternative forum. Other potential witnesses will probably include Golf Maritime and Bravo Maritime personnel, who will be found in Greece or Cyprus.

### iii. Cost

In light of the fact that both Captain Ioannidis and his wife are in Greece, many of the witnesses are in Greece or Cyprus, and the bulk of the evidence is also in Greece or Cyprus, this court predicts that a trial in Greece or Cyprus would cost the parties less than trial here.

### iv. Possible View of Premises

The next factor to consider is the possibility of viewing the M/V SEA CONCERT. The vessel is probably sailing the high seas and none of the fora offer any distinct advantage in this regard. However, photographs were taken of the vessel, which can be introduced in Greek courts.

### b. Public Interest Factors

The public interest factors address the burden the litigation would impose upon the court and members of the public were it to proceed in the forum chosen by Ioannidis. They include: (1) administrative difficulties flowing from court congestion; (2) imposition of jury duty on the people of a community unrelated to the litigation; (3) the local interest in resolving the controversy at home; (4) the preference for having a forum apply a law with which it is familiar; and (5) "the avoidance of unnecessary conflicts of law problems." *Gemini Capital*, 150 F.3d at 1093; citing *Creative Technology*, 61 F.3d at 703–04; *Zipfel*, 832 F.2d at 1485.

Here, Oregon and the United States have little interest in resolving this dispute. While the accident took place in United States waters, no United States citizen was involved; none of the witnesses on the vessel are United States citizens; the vessel flies the flag of Cyprus; and it is owned by a Cypriot corporation. The choice of law discussion reveals that the law of Greece or Cyprus should apply to this dispute. This court has no expertise in foreign law, while courts in Greece and Cyprus are experts at applying their own law. Moreover, Greece has a strong interest in resolving this dispute because one of its own citizens was severely injured.

### 5. Conclusion

Both Greece and Cyprus are adequate alternative fora, and the balance of private and public interests weighs strongly in favor of dismissing this action for *forum non conveniens*. Ioannidis contends, however, that if this case is dismissed, she will lose the security represented by Golf Maritime's $5,000,000 letter of undertaking. Golf Maritime responds that Ioannidis would not be left unsecured, as the M/V SEA CONCERT is adequately insured. Ioannidis further contends that if this case

is dismissed, she will be disadvantaged by the resulting loss of evidence. This court, however, is unable to determine that she will lose any valuable evidence through the dismissal of this claim. Any evidence collected by Ioannidis' counsel has already been preserved; hospital records will be available no matter what forum hears the claim; and witnesses will perhaps be easier to find in Greece or Cyprus. Therefore, Ioannidis' case should be dismissed.

## II. Forum Selection Clause

Golf Maritime also argues that Captain Ioannidis is bound by the terms of valid and enforceable forum selection clause which mandates that he bring any and all claims in Cyprus. Ioannidis, however, responds that European Community and Greek law trump this clause because they prohibit choice of law and forum clauses in employment contracts of this nature. In any event, this court need not address the choice of law and forum selection clauses in Captain Ioannidis' contract because his claims should be dismissed under the *forum non conveniens* doctrine, as discussed above.

## III. Conclusion

Based on the application of the *Lauritzen/Rhoditis* factors, foreign law applies to Ioannidis' claim under maritime law. Therefore, she cannot state a claim under the Jones Act or other general maritime law. Finally, Ioannidis' claims should be dismissed for *forum non conveniens*, as Greece or Cyprus provide a better forum for this lawsuit.

## RECOMMENDATION

For the reasons stated above, Golf Maritime's Motions to Dismiss and to Strike (docket # 10) should be GRANTED, conditioned on: (1) a waiver by Golf Maritime of any statute of limitations defenses applicable in a foreign forum; (2) all of the defendants making a general appearance in the foreign country selected by Ioannidis and submitting to personal jurisdiction in that forum; (3) Golf Maritime posting whatever security for the vessel the foreign court requires; (4) the foreign court's acceptance of jurisdiction over this case; and (5) if necessary, a stipulation by Golf Maritime that all depositions of witnesses and other documentary evidence obtained in the United States are admissible in a foreign court in lieu of live testimony.

## SCHEDULING ORDER

Objections to these Findings and Recommendations, if any, are due November 2, 2000. If no objections are filed, then the Findings and Recommendations will be referred to a district court judge and go under advisement on that date.

If objections are filed, the response is due no later than November 17, 2000. When the response is due or filed, whichever date is earlier, the Findings and Recommendations will be referred to a district court judge and go under advisement.

October 12, 2000.